STATE OF NORTH CAROLINA v. KENNETH RAY ADAMS, JR., AND MICHAEL LAMONT SOWELL, DEFENDANTS

No. COA10-906

(Filed 7 June 2011)

**Criminal Law— jury instructions—separate consideration of charges and defendants—instruction not given**

The trial court committed plain error in an attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury case by failing to instruct the jury to consider the charges against each defendant separately from the other charges, and to consider the charges against each defend-

ant separately from the other defendant. Defendants were entitled to a new trial.

Appeal by defendants from judgments entered 16 December 2009 by Judge Carl R. Fox in Rowan County Superior Court. Heard in the Court of Appeals 9 February 2011.

*Attorney General Roy Cooper, by Assistant Attorneys General David N. Kirkman and Philip A. Lehman, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant Adams.*

*Reita P. Pendry for defendant Sowell.*

ELMORE, Judge.

Kenneth Ray Adams, Jr. (defendant Adams), and Michael Lamont Sowell (defendant Sowell) appeal from judgments entered pursuant to jury verdicts of guilty on two counts each of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. After careful review, we reverse and remand for a new trial.

Johnnie Thompson and Cecil Hall (together, the victims) were at Mr. Thompson's home, where Mr. Hall also sometimes stayed, on 29 April 2007 when a car slowly drove past the house four times. Two men—defendants—then appeared at the edge of the yard, and Mr. Hall went to see what they wanted. Defendant Sowell approached Mr. Hall; defendant Adams stood in the yard talking on his cell phone and never spoke to either of the victims.

Defendant Sowell told Mr. Hall that someone had sent them to purchase drugs from Mr. Thompson; Mr. Hall responded that Mr. Thompson was now in barber school and no longer sold drugs. Mr. Thompson came outside at that point, and he and defendant Sowell had a similar exchange, in which defendant Sowell asked if he could "cop an ounce" from Mr. Thompson. Mr. Thompson replied "I don't know what you're talking about[,]" and, per Mr. Hall's testimony, defendant Sowell replied "Well, what about this?" and pulled out a gun. Defendant Sowell then began shooting at the victims.

Both men were shot—Mr. Hall had been shot twice in the legs, and Mr. Thompson had been shot eight times in the leg, abdomen, and chest. When the shooting started, Mr. Hall ran inside the house; he

emerged again moments later to find Mr. Thompson lying on the porch covered in blood.

Meanwhile, defendant Sowell ran away from Mr. Thompson's house, up the street. According to the testimony of a man visiting Mr. Thompson's neighbor, defendant Adams, who had been standing fifteen to twenty-five feet away from defendant Sowell at the time of the shooting, started to run away, tripped in a ditch, and then continued to run away. The men got into a car, with defendant Adams driving, and began to drive away; a police car gave chase.

Defendants pulled off of the highway onto a smaller street and the car stalled, at which point defendants exited the car and began to attempt to escape on foot. Defendant Sowell testified that the gun fell out of his lap as he jumped out of the car; he then ran approximately half a mile to a mile into an open field. When he turned around to see whether an officer was chasing him, he ran into a tree and knocked himself out. He was apprehended at that point. Defendant Adams was apprehended soon after hiding in the utility closet of a nearby apartment complex.

Defendant Sowell testified that Mr. Thompson fired a gun at defendant Sowell before defendant Sowell fired at Mr. Thompson, and that defendant Sowell fired only in self-defense; the neighbor's friend who testified as to the events of the shooting found a gun belonging to Mr. Thompson in Mr. Thompson's hands when he ran over immediately after the shooting to render aid. Defendant Sowell also testified that defendant Adams pulled a gun out when Mr. Thompson began firing, and forensic evidence showed that at least one bullet retrieved from the walls of Mr. Thompson's house was fired from a gun belonging to defendant Adams; that gun was recovered from under defendant Adams's seat in the getaway car after defendants were apprehended. Defendant Adams did not testify.

Both defendants were convicted of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury as to each victim. Defendant Adams was sentenced to two consecutive terms of imprisonment of 201 to 251 months, followed by a term of fifteen to eighteen months; defendant Sowell was sentenced to two consecutive terms of imprisonment of 251 to 311 months, followed by a term of twelve to fifteen months. Both defendants now appeal.

Defendants make five similar arguments in their separate briefs; both argue that the trial court committed plain error in failing to

instruct the jury (1) to consider the charges against each defendant separately from the other charges and (2) to consider the charges against each defendant separately from the other defendant. Because we agree, we do not address either defendant's other arguments.

> Plain error is fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or . . . grave error which amounts to a denial of a fundamental right of the accused[.] In order to prevail under a plain error analysis, a defendant must show: (1) there was error; and (2) without this error, the jury would probably have reached a different verdict.

*State v. Smith*, 152 N.C. App. 29, 37-38, 566 S.E.2d 793, 799 (2002) (quotations and citations omitted; alteration in original).

The charge to the jury on attempted first degree murder, in pertinent part, was as follows:

> The defendants have been charged with attempted first degree murder. For you to find *the defendants guilty* of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that each of the defendants intended to commit first degree murder. . . .
>
> And, second, that at the time each of the defendants had this intent[,] *they performed* an act which was calculated and designed to accomplish the crime but which fell short of the completed crime.

(Emphases added.)

The trial court's instructions on self-defense as to the charge of attempted first degree murder, in pertinent part, were as follows:

> *The defendants would not be guilty* of attempted first degree murder on the grounds of self-defense if: First, it appeared to each of the defendants that they believed it to be necessary to use potentially deadly force against the victims in order to save themselves from death or great bodily harm. Second, the circumstances as they appeared to each of the defendants at the time were sufficient to create such a belief . . . .
>
> If the State fails to prove that *the defendants did not act in self-defense, you must find the defendants not guilty.*

(Emphases added.)

The trial court's instructions on assault with a deadly weapon with intent to kill inflicting serious injury, in pertinent part, were as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date *the defendants intentionally shot the victims* repeatedly with a handgun or attempted to shoot the victims repeatedly with a handgun and that the gun or guns was or were deadly weapons and that each of the defendants intended to kill the victims and did seriously injure them or attempt to seriously injure them, nothing else appearing, *it would be your duty to return verdicts of guilty.*

> However, if you do not so find or have a reasonable doubt as to one or more of these things, *then you consider whether the defendants are guilty* of assault with a deadly weapon inflicting serious injury.

(Emphases added.)

Defendants argue that the emphasized portions of the instructions above "instructed the jury to consider the defendants' guilt collectively, rather than individually[,]" and as such affected the outcome of the trial. We agree.

Our Courts have repeatedly "found reversible error where two or more defendants are tried together for the same offense upon jury instructions susceptible to the construction that the jury should convict all of the defendants if they find beyond a reasonable doubt that any of the defendants committed the offense charged." *State v. McCollum*, 321 N.C. 557, 559-60, 364 S.E.2d 112, 113 (1988) (citation omitted). This Court remanded for new trial in *State v. Lockamy* where the trial court's instructions mentioned the co-defendants together throughout, using phrases such as "they knew or should have known" and "they intended," and never referring to the defendants individually. 31 N.C. App. 713, 715, 230 S.E.2d 565, 567 (1976). We concluded by holding that "the trial judge must either give a separate final mandate as to each defendant or otherwise clearly instruct the jury that the guilt or innocence of one defendant is not dependent upon the guilt or innocence of a codefendant." *Id.* at 716, 230 S.E.2d at 568. The same type of lumping together of defendants and charges occurred in the case at hand and, as such, we find that the instructions were in error.

**STATE v. ADAMS**

[212 N.C. App. 413 (2011)]

The State contends that the jury instructions were not in error, though it makes no supporting argument for that statement aside from its bald assertion. Instead, in a section devoid of case law, the State argues at length that any error in the instructions actually *increased* the burden for the State, as it would have required the State to prove that both defendants had committed both crimes in order for the jury to convict either defendant. We find this argument unconvincing.

The jury instructions reproduced above impermissibly grouped defendants together in presenting the charges, the issues, and defendants to the jury. Given that conflicting evidence was presented as to the order in which weapons were drawn and what role generally each defendant played in the incident, this confusion likely had an effect on the jury's verdict. As in *McCollum*, "we are unable to say here, as we have said in other cases, that we are 'convinced that the jurors were not misled by the portion of the charge to which defendants except.'" 321 N.C. at 560, 364 S.E.2d at 113 (quoting *State v. Tomblin*, 276 N.C. 273, 277, 171 S.E.2d 901, 904 (1970)).

New trial.

Judges STEELMAN and ERVIN concur.