An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA12-1109
NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

v.                                      Edgecombe County
                                        No. 10 CRS 52611
                                        No. 10 CRS 52613
ROGER BENJOUR ARMSTRONG and
DOMINIQUE ANTWON RANDOLPH

Appeal by defendants from judgments entered 15 February 2012 by Judge Clifton W. Everett, Jr. in Edgecombe County Superior Court. Heard in the Court of Appeals 14 March 2013.

> *Roy Cooper, Attorney General, by William P. Hart, Jr., Assistant Attorney General, for the State.*

> *Staples Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant Armstrong.*

> *W. Michael Spivey for defendant-appellant Randolph.*

STEELMAN, Judge.

Defendants failed to show plain error with regard to the trial court's jury instructions. The trial court's questions to witnesses during the presentation of evidence did not constitute an improper expression of opinion concerning the guilt of

defendants. Where the record on appeal was insufficient for us to determine whether ineffective assistance of counsel had occurred, defendant Randolph's ineffective assistance of counsel claim is dismissed without prejudice.

## I. Factual and Procedural Background

On 22 June 2010, two men broke into the residence of Haywood Gaines and Nicole Sheffield on Planter Street in Rocky Mount. Gaines and Sheffield identified the defendants in court as being Roger Armstrong and Dominique Randolph (defendants). Upon breaking into the residence, defendants assaulted Gaines and Sheffield, and robbed them of $200 and an ATM card. Randolph touched Sheffield between her legs, and threatened to rape her. Photographs from an automatic teller machine showed defendant Armstrong attempting to use Gaines' ATM card about 45 minutes after the robbery.

At trial, Armstrong's former girlfriend, Kenya Tillery, testified that on the date of the robbery, Armstrong was with her in a motel room, but left. When he returned, he told her that he had gone to Planter Street, and had hit two people with a gun. He also stated that it was Randolph who had driven him to Planter Street and then back to the motel.

Armstrong was indicted for one count of robbery with a dangerous weapon, one count of first-degree burglary, one count of financial transaction card theft, and one count of unlawfully obtaining a credit card. He was also indicted for two counts of assault with a deadly weapon inflicting serious injury, one for Gaines and one for Sheffield. Randolph was indicted for one count of robbery with a dangerous weapon, one count of first-degree burglary, and the sexual battery of Sheffield.

On 13 February 2012, Armstrong pled guilty to one count of unlawfully obtaining a credit card. On 15 February 2012, a jury found Armstrong guilty of robbery with a dangerous weapon, first-degree burglary, financial transaction card theft, assault with a deadly weapon inflicting serious injury (as to Gaines), and assault with a deadly weapon (as to Sheffield). The jury found Randolph guilty of robbery with a dangerous weapon and first-degree burglary. Randolph was found not guilty of sexual battery. As to Armstrong, the trial court arrested judgment on the conviction for financial transaction card theft and unlawfully obtaining a credit card. The trial court then imposed two consecutive active sentences upon Armstrong of 73-97 months for robbery with a dangerous weapon and first-degree burglary. Armstrong's two assault convictions were

consolidated, and a third consecutive active sentence of 23-37 months was imposed. The trial court imposed two consecutive active sentences upon Randolph of 73-97 months for robbery with a dangerous weapon and first-degree burglary.

Defendants appeal.

## II. Separate Determinations of Guilt

In their first argument, defendants contend that the trial court committed plain error in failing to instruct the jurors to determine the guilt or innocence of defendants Armstrong and Randolph separately. We disagree.

## A. Standard of Review

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

"On appeal, this Court reviews a jury charge contextually as a whole, 'and when so considered if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed, we will not sustain an exception for that the instruction might have been better stated.'" *Progress Energy Carolinas, Inc. v. Strickland*, 200 N.C. App. 600, 602, 685 S.E.2d 521, 524 (2009) (quoting *Jones v. Satterfield Dev. Co.,* 16 N.C. App. 80, 86-87, 191 S.E.2d 435, 439-40, *cert. denied,* 282 N.C. 304, 192 S.E.2d 194 (1972)).

## B. Analysis

In the instant case, the charges against defendants were consolidated for trial. Defendants contend that the trial court impermissibly implied in its mandate to the jury that one defendant could not be found guilty unless both were. Defendants contend that this was plain error.

In its jury instructions, the trial court listed the charges against each defendant individually. However, in several instances, the court also referred to the defendants collectively. In the beginning of its jury instructions:

In this case, *the defendants, Mr. Armstrong and Mr. Randolph, have entered pleas of not guilty* to these charges. The fact that *they* have been charged is no evidence of guilty. [sic] Under our system of justice when a defendant pleads not guilty, he is not required to prove his innocence. He is presumed to be innocent. The state must prove to you that *the defendants* are guilty beyond a reasonable doubt.

(Emphasis added) With respect to its instructions on the crimes common to both defendants:

Now, with respect to the charges of robbery with a dangerous weapon and first-degree burglary on Mr. Armstrong in 10-CRS-52611 and 10-CRS-52613 that's Mr. Randolph guilty of robbery with a dangerous weapon or not guilty or guilty of first-degree burglary or not guilty. *I'm going to give you the instructions on both -- and these instructions apply to both defendants on these two charges.* You all understand that now.

The instructions I'm going to give you I'm going to give it to you one time. *It's going to apply to both defendants.*

(Emphasis added) With respect to its instructions on the elements of robbery with a dangerous weapon:

*The defendants, Mr. Armstrong and Mr. Randolph*, have been charged with robbery with a firearm . . .

The first element [is] that *the defendants* took property . . .

Secondly, that *the defendants* carried away the property. . . .

Four, that *the defendants* knew they were not entitled to take the property. . . .

Fifth, that at the time of the taking, *the defendants* intended to deprive the person of its use permanently. . . .

Sixth, that *the defendants* had a firearm in *their* possession at the time *they* obtained the property. . . .

And, seventh, that *the defendants* obtained the property by endangering or threatening the life of that person with the firearm.

(Emphasis added) Finally, with respect to its instructions on the elements of first-degree burglary[1]:

*These instructions will apply equally to both of these defendants.* Now, *the defendants* have been charged with first-degree burglary . . .

Now, for you to find *the defendants* guilty of this charge, the state must prove six things . . .

First, that there was a breaking and entering by *the defendants* or someone with whom *they* were acting in concert. . . .

And, sixth, that at the time of the breaking and entering, *the defendants* or someone with whom *they* were acting in concert intended to commit armed robbery.

---

[1] We note that the trial court made reference to the doctrine of acting in concert in its instructions. The doctrine of acting in concert, however, is designed to impose principal liability on a secondary actor in a crime. In the instant case, both defendants were charged as principal actors; as such, the acting in concert doctrine was not appropriately applied.

(Emphasis added)    At one point during the jury instructions, counsel for defendant Randolph observed that, during the instructions on assault, the trial court made reference to "they" when only one defendant was charged with that crime.  The court corrected this instruction to the jury.  The jury returned separate verdict sheets against each defendant.

Defendants contend that the court repeatedly referred to defendants collectively, thus improperly influencing the jury to require that both be found guilty.  Defendants cite to our decision in *State v. Adams* in support of this argument.  In *Adams*, two defendants were found guilty of two counts each of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury.  *State v. Adams*, 212 N.C. App. 413, 414, 711 S.E.2d 770, 771 (2011).  The trial court, in its instructions to the jury, repeatedly referred to the defendants collectively, with statements like "to find the defendants guilty[,]" "each of the defendants had this intent[,]" and "the defendants did not act in self-defense[.]" *Id*. at 416, 711 S.E.2d at 772-73.  Reviewing the jury instructions for plain error, we concluded that:

> The   jury   instructions   reproduced   above

> impermissibly grouped defendants together in presenting the charges, the issues, and defendants to the jury. Given that conflicting evidence was presented as to the order in which weapons were drawn and what role generally each defendant played in the incident, this confusion likely had an effect on the jury's verdict. As in *McCollum,* "we are unable to say here, as we have said in other cases, that we are 'convinced that the jurors were not misled by the portion of the charge to which defendants except.'" 321 N.C. at 560, 364 S.E.2d at 113.

*Id.* at 418, 711 S.E.2d at 773. We therefore reversed and remanded for a new trial as to both defendants.

In the instant case, any such error was ameliorated by the trial court's further instructions. Although the trial court referred to defendants collectively in some places, it also referred to them separately. For example, in its charge to the jury, the trial court listed the charges against each defendant separately. Further, in its subsequent instructions to the jury, although it defined each charge as applying to both defendants, the trial court reminded the jury that each offense was a separate count on a separate verdict sheet for each defendant. Additionally, when counsel for defendant Randolph indicated that the trial court had erroneously instructed the jury that both defendants were subject to the assault with a deadly weapon charge, the trial court corrected itself in its

instructions. Where a trial court issues an erroneous instruction, this error may be ameliorated by a corrective instruction.

Viewing the jury instructions contextually, as a whole, we hold that each of the two defendants has failed to demonstrate that any error upon the part of the trial court had a probable impact on the jury's determination of guilt.

This argument is without merit.

### III. Alleged Breach of Impartiality by the Trial Court

In their second argument, defendants contend that the trial court erred in making repeated statements and questions conveying to the jury an opinion that defendants were guilty of the crimes with which they were charged. We disagree.

### A. Standard of Review

The question of whether statements by a trial court during a trial violate the court's duty of impartiality is preserved as a matter of law, regardless of whether a defendant objects during the trial. *State v. Duke*, 360 N.C. 110, 123, 623 S.E.2d 11, 20 (2005), *cert. denied*, 549 U.S. 855, 166 L.Ed.2d 96 (2006); *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). Whether the statements deprive the defendant of a fair trial is "determined by what is said and its probable impact

upon the jury in light of all attendant circumstances." *State v. Burke*, 342 N.C. 113, 122-23, 463 S.E.2d 212, 218 (1995).

## B. Analysis

Defendants contend that the trial court erred in its questions and statements to witnesses and in its instructions to the jury, which defendants allege implied that defendants were guilty of the offenses charged. We disagree.

At several points during the examination of witnesses, the court asked questions of witnesses, or made statements, in order to clarify testimony. Such questions are within the discretion of the trial court. *See State v. Smarr*, 146 N.C. App. 44, 49, 551 S.E.2d 881, 884 (2001), *disc. review denied*, 355 N.C. 291, 561 S.E.2d 500 (2002). During the State's examination of Gaines, the following exchange took place:

> THE COURT: What date was this?
>
> Q. Do you recall it being in June of 2010, Mr. Gaines?
>
> A. Yes.
>
> Q. Do you remember the specific date?
>
> A. No, I don't.
>
> THE COURT: June what?
>
> THE STATE: Judge, the indictment reads 6-22 of 2010.

THE COURT: Well, he said June, okay. June of 2010.

A. The 22nd.

THE COURT: Go ahead.

. . .

THE COURT: Roger what's his name? Roger who?

MR. WIGGINS: Objection to the use of the name, your Honor, without any further description.

THE COURT: Sir.

A. He the one there.

MR. WIGGINS: Objection to the use of the defendant's name without any further description or foundation.

THE COURT: All right. Well, what's Roger's name?

A. Roger Benjour Armstrong.

THE COURT: Roger Armstrong, okay. Go ahead.

A. He came in, pistol whipped me about ten to fifteen times.

THE COURT: How do -- wait a minute. How do you know him?

A. I don't know.

THE COURT: You don't know him.

A. I don't know him.

THE COURT: You've never seen him before.

A. Never seen him before. But come to find out, he has a cousin that stays directly behind me.

MR. WIGGINS: Well, objection to what he found out, your Honor.

THE COURT: No, no, no, no, don't get into that.

A. I never seen the guy before.

THE COURT: All right, Mr. Wolfe, you need to flush that out.

. . .

THE COURT: Which one is the fellow you refer to as Roger Armstrong?

A. The light-skin one.

THE COURT: Where is he? Is he here today?

A. Right there. (pointing.)

THE COURT: Where is he seated?

A. Right beside his lawyer.

THE COURT: What's he got on?

A. Multi-colored shirt, Levi jeans, shoes.

THE COURT: All right. Let the record reflect that he's identified the defendant, Roger Armstrong. Go ahead.

. . .

THE COURT: What did he say?

A. He didn't say anything. He just went straight to the back room, just ransacking the place. As Roger was asking –

THE COURT: Where is he? Is he in the courtroom today?

A. Yes, he is.

THE COURT: Where is he?

A. To the far room, white tie.

THE COURT: Wearing a white tie, sitting next to Mr. Wiggins.

A. Yes.

THE COURT: That's Dominique who?

A. Randolph.

THE COURT: Okay.

Q. Does that mean, then, Mr. Gaines, that the defendant, Roger Armstrong, began hitting you and the defendant, Dominique Randolph, went to another part of the house.

A. Right.

THE COURT: Let the record reflect he's identified the defendant, Dominique Randolph, as the other individual. Go ahead.

We find this interaction illustrative of those to which defendants object. Defendants contend that this excerpt, taken alongside the others, constituted the trial court improperly conveying an opinion that defendants were guilty of the offenses

charged. Viewing the record under the totality of the circumstances, we do not agree. The trial court's exercise of its discretionary power to clarify the testimony of witnesses was proper.

Defendants further contend that the trial court's jury instructions, in implying that defendants acted together, similarly constituted an improper expression of opinion. Defendants' contentions are based upon their first argument, that the trial court conflated the defendants. We hold that the trial court's conflation of defendants was not plain error, under the totality of the circumstances. We further hold that the trial court's charge to the jury did not express any opinion as to the guilt of either defendant.

This argument is without merit.

## IV. Ineffective Assistance of Counsel

In his third argument, defendant Randolph contends that he was deprived of his Sixth Amendment right to effective assistance of counsel. We dismiss this argument without prejudice to defendant's filing of a motion for appropriate relief with the trial court.

### A. Standard of Review

Our Supreme Court has instructed that "should the reviewing court determine the

> IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's rights to reassert them during a subsequent MAR proceeding." *Fair* at 167, 557 S.E.2d at 525. In order to determine whether a defendant is in a position to adequately raise an ineffective assistance of counsel claim, we stress this Court is limited to reviewing this assignment of error only on the record before us, without the benefit of "information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor[,]" *Buckner* at 412, 527 S.E.2d at 314, that could be provided in a full evidentiary hearing on a motion for appropriate relief.

*State v. Stroud*, 147 N.C. App. 549, 554-55, 557 S.E.2d 544, 547 (2001).

> To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

## B. Analysis

Defendant Randolph contends that he received ineffective assistance of counsel (IAC) in violation of his Sixth Amendment rights.

When an IAC claim is brought on direct appeal, our preliminary inquiry is whether this Court has sufficient information to determine the claim, or whether that claim should be dismissed without prejudice so that the appellant may file it as a Motion for Appropriate Relief with the trial court. *Stroud* at 554-55, 557 S.E.2d at 547.

In the instant case, defendant Randolph contends that the trial court's denial of his attorney's motion to suppress evidence, coupled with his attorney's alleged elicitation of evidence linking defendant to the crime scene, constituted ineffective assistance of counsel. We hold, however, that there is insufficient evidence in the record before us to determine IAC. Accordingly, we dismiss this portion of Randolph's appeal without prejudice.

## V. Conclusion

The trial court did not commit plain error in its instructions to the jury with regard to the two defendants. The trial court did not violate its duty of impartiality with regard

to the guilt of the two defendants. Defendant Randolph's IAC argument is dismissed without prejudice.

NO ERROR.

Judges ELMORE and STROUD concur.

Report per Rule 30(e).