STATE OF NORTH CAROLINA v. DAVID ORDIS LAWRENCE

No. 100PA11

(Filed 13 April 2012)

**Conspiracy— robbery with dangerous weapon—jury instruction—plain error analysis—no fundamental error—failure to show prejudicial effect**

The Court of Appeals erred by finding plain error in the trial court's jury instructions regarding the elements of conspiracy to commit robbery with a dangerous weapon and by granting defendant a new trial on that charge. In light of the overwhelming and uncontroverted evidence, defendant could not show the prejudicial effect necessary to establish a fundamental error. In addition, the error in no way seriously affected the fairness, integrity, or public reputation of judicial proceedings.

On discretionary review pursuant to N.C.G.S. § 7A 31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 706 S.E.2d 822 (2012), finding no error in part and reversing in part judgments entered on 4 November 2009 by Judge Douglas B. Sasser in Superior

STATE v. LAWRENCE

[365 N.C. 506 (2012)]

Court, Hoke County, and remanding for a new sentencing hearing and for a new trial in part. Heard in the Supreme Court on 9 January 2012.

*Roy Cooper, Attorney General, by Daniel P. O'Brien, Assistant Attorney General, for the State-appellant.*

*James R. Parish for defendant-appellee.*

MARTIN, Justice.

The Court of Appeals found plain error as to the trial court's jury instructions regarding the elements of conspiracy to commit robbery with a dangerous weapon and granted defendant a new trial on that charge. The only questions before this Court are (1) whether the Court of Appeals applied the proper standard of review for plain error and (2) whether the trial court's jury instructions regarding conspiracy to commit robbery with a dangerous weapon rise to the level of plain error.

Almost thirty years ago, in *State v. Odom,* we adopted the federal plain error rule for criminal cases. 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 103 S. Ct. 381 (1982)).[1] Generally speaking, the rule provides that a criminal defendant is entitled to a new trial if the defendant demonstrates that the jury probably would have returned a different verdict had the error not occurred. *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). Since that time, our appellate courts have applied the plain error standard using several different formulations.[2] *See, e.g., State v. Towe,* —— N.C. App. ——, ——, 707 S.E.2d 770, 775 (finding plain error because "it [was] highly plausible that the jury could have reached a different result"), *disc. rev. allowed,* 365 N.C. 202, 709 S.E.2d 599 (2012); *State v. Wright,* —— N.C. App. ——, ——, 708 S.E.2d 112, 121 (holding there was not plain error because "a different result probably would not have been reached absent [the trial court's alleged error]"), *disc. rev. denied,* 365 N.C. 200, 710 S.E.2d 9-10 (2011); *State v.*

---

1. In North Carolina, plain error review has no application to appeals in civil cases. *See Durham v. Quincy Mut. Fire Ins. Co.,* 311 N.C. 361, 367, 317 S.E.2d 372, 377 (1984).

2. The lack of uniformity in the administration of the plain error standard should not be surprising. The plain error rule does much to protect the integrity of the adversarial process, ensure fairness and the public perception of fairness, and avoid miscarriages of justice. *See* Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule,* 40 Vand. L. Rev. 1023, 1052-54 (1987). However, a clear, conceptual definition of the rule has remained somewhat elusive. *See id.*

*Jones,* —— N.C. App. ——, ——, 703 S.E.2d 772, 774 (2010) (defining plain error as "so grave as to deny a fundamental right of the defendant so that, absent the error, the jury would have reached a different result"), *vacating and remanding with instructions,* —— N.C. ——, 722 S.E.2d 509 (2012); *State v. Walker,* 139 N.C. App. 512, 520, 533 S.E.2d 858, 862 (2000) (holding that any error was harmless and thus not plain error). These incomplete and inconsistent formulations lead us to conclude that clarification of the plain error standard is needed. After taking the opportunity to review application of the plain error standard, we reverse.

In August 2008, defendant engaged in a criminal partnership with a group of out-of-state residents planning to rob a drug dealer in North Carolina. The participants who drove from Florida were Marlita Williams (Williams), Travis McQueen, Twanda McQueen, and Bernard King (King). The group travelled to Fayetteville, North Carolina, in two cars. Upon arriving in Fayetteville, the group stopped at a Home Depot store and stole zip ties and a Mercury Milan for use during the course of the planned robbery. The group then went to the home of Williams's aunt to continue planning the robbery.

That night, the group drove by and parked outside several homes to choose a target. They believed each residence to be the home of a drug dealer and thus to contain significant amounts of money. The group subsequently followed a potential victim, Charlise Curtis, with whom Williams was familiar, back to her neighborhood. They decided they would rob Ms. Curtis, who was dating a man they believed was a drug dealer.

The group later discussed each person's role in the robbery. Travis McQueen would grab Ms. Curtis while threatening her with a gun. Williams said she knew someone else who could help Travis McQueen with the "muscle." The group drove to the home of defendant, David Ordis Lawrence. Defendant met the group outside and agreed to participate in the robbery. He volunteered that he already had a weapon and pulled out his semiautomatic .380 caliber handgun. They planned to rob Ms. Curtis the next morning when she took her child to school.

The next day, 29 August 2008, King drove the stolen Mercury Milan to pick up defendant. King and defendant then drove to a service station to fill up a gasoline can. After Travis McQueen joined them in the car, they discussed their plan on the way to Ms. Curtis's home. They decided to wait for Ms. Curtis to reach the end of the driveway.

They would then block her car in, and Travis McQueen and defendant would jump out of the woods, grab her, and take her back to the house. They planned to then tie her up and threaten her with their guns to force her to tell them where her boyfriend's money and drugs were located. If guns did not work, they planned to douse Ms. Curtis in gasoline and threaten to set her on fire unless she talked.

When they arrived at Ms. Curtis's residence, Travis McQueen and defendant hid in the woods. King remained in the driver's seat of the car so he could block Ms. Curtis in the driveway. Shortly thereafter, when a marked police car pulled behind King's car in response to calls from neighbors, King attempted to drive off at a high speed, but he then jumped out of the vehicle and fled. While pursuing King on foot, officers also saw persons later identified as Travis McQueen and defendant run from the woods, but the officers were unable to catch any of the three.

The group later reassembled and took defendant back to his house before returning to the home of Williams's aunt. There, the group decided they would again attempt to rob Ms. Curtis, but would wait some time before making the attempt.

The next day, the group went to a mall parking lot and stole a Ford F-250 pickup truck and a purse. They used credit cards from the stolen vehicle and purse to buy additional supplies for the next robbery attempt. The group decided to attempt a robbery again that night. They picked up defendant, who said he was ready for the second attempt. Defendant and the group then waited for a telephone call from one of Williams's family members to let them know when Ms. Curtis was on her way home. Defendant, King, and Travis McQueen drove to Ms. Curtis's home in the truck, while Twanda McQueen and Williams drove in another car. Travis McQueen and defendant planned to ambush Ms. Curtis as she walked to the door of her house.

King drove to Ms. Curtis's home and let defendant and Travis McQueen out of the vehicle before driving to a nearby service station to wait for them. Defendant and Travis McQueen ran around to the back of the house so neighbors would not see them. Nonetheless, a neighbor, Robert Murray, had observed this activity. In response, he called the police and retrieved his pistol. Mr. Murray then confronted the men, who fled the area. Mr. Murray called another neighbor and alerted him that two individuals were running his way. The second neighbor attempted to stop them, but they ran away.

Meanwhile, a police officer attempted to detain King, who was still parked at the service station, but King sped away. King wrecked the stolen truck, fled on foot, and was eventually arrested. Travis McQueen was later picked up by Twanda McQueen and Williams. Defendant hid in the woods all night and walked home in the morning.

King cooperated with the police and told them the details of the plan. He also stated that defendant was fully aware of the plan to rob and kidnap Ms. Curtis. Travis and Twanda McQueen were arrested a few days later. Twanda McQueen cooperated with police, also identifying defendant and describing the plan. Defendant was apprehended on 8 January 2009, approximately four months later, by U.S. Marshals in Mississippi.

On 27 October 2008, defendant was indicted by a grand jury in Hoke County for two counts each of attempted robbery with a dangerous weapon, attempted kidnapping, attempted breaking and entering, and conspiracy to commit robbery with a dangerous weapon. Following his arrest, he was tried and convicted by a jury of all eight charges. The trial court arrested judgment on the attempted kidnapping convictions and sentenced defendant to an active term of 90 to 117 months for the first count of attempted robbery with a dangerous weapon, a consecutive term of 90 to 117 months for the second count of attempted robbery with a dangerous weapon, a consecutive term of 30 to 45 months for one count of conspiracy to commit robbery with a dangerous weapon, a consecutive term of 30 to 45 months for the second count of conspiracy to commit robbery with a dangerous weapon, and two concurrent terms of 6 to 8 months each for two counts of attempted breaking and entering.

At defendant's trial, the trial court correctly instructed the jury on the elements of attempted robbery with a dangerous weapon when delivering its charge on that offense. That instruction included the elements that defendant possessed a firearm and intended to use it to "endanger or threaten the life of [the victim]." However, in its charge on conspiracy to commit robbery with a dangerous weapon, the trial court correctly instructed that robbery with a dangerous weapon is the taking of property from a person "while using a firearm," but erroneously omitted the element that the weapon must have been used to endanger or threaten the life of the victim. The State concedes that the instruction was erroneous because the trial court should have set out all the elements of robbery with a dangerous weapon in that portion of the charge, according to *State v. Gibbons*,

303 N.C. 484, 489, 279 S.E.2d 574, 577-78 (1981) (holding that mere possession of a dangerous weapon is insufficient to support a charge of robbery with a dangerous weapon). The trial court repeated the erroneous instruction when the jury asked for clarification on the conspiracy instruction. Defendant did not object to either instruction.

On appeal, the Court of Appeals held that the trial court's erroneous jury instructions on conspiracy to commit robbery with a dangerous weapon amounted to plain error. *State v. Lawrence*, —— N.C. App. ——, ——, 706 S.E.2d 822, 835-36 (2011). In so doing, the Court of Appeals stated that for an instructional error to rise to the level of plain error, "[t]he party asserting error bears the burden" of "demonstrat[ing] that such error was likely, in light of the entire charge, to mislead the jury." *Id.* at ——, 706 S.E.2d at 834 (quoting *State v. Blizzard*, 169 N.C. App. 285, 297, 610 S.E.2d 245, 253 (2005)) (emphasis omitted) (quotations marks omitted). The Court of Appeals opinion included various other holdings that are not the subject of this appeal and will not be addressed.[3]

This case presents the question of how the North Carolina plain error standard of review should be applied to error that is not pre-served for appellate review. The State contends that the Court of Appeals applied the wrong measure for plain error review of erroneous jury instructions. The State further argues that if the correct standard had been applied, defendant would not have met his burden of establishing that the error amounted to plain error. We agree that defendant has not demonstrated plain error.

We are mindful that this Court has not issued a doctrinal statement regarding the plain error standard of review in almost thirty years. It is the institutional role of this Court to provide guidance and clarification when the law is unclear or applied inconsistently. One of the "primary goal[s] of adjudicatory proceedings is the uniform application of law." *Bacon v. Lee*, 353 N.C. 696, 712, 549 S.E.2d 840, 851, *cert. denied*, 533 U.S. 975, 122 S. Ct. 22 (2001); *see also State v. Williams*, 351 N.C. 465, 469, 526 S.E.2d 655, 657 (2000). Therefore, to

---

3. The Court of Appeals also found no error in the trial court's dismissal of defendant's motions to dismiss the charges for attempted kidnapping, attempted robbery with a dangerous weapon, and attempted breaking and entering; found no error as to the trial court's instruction to the jury regarding the law of flight; found no plain error as to the trial court's jury instructions regarding attempted felonious breaking and entering; and found that the evidence was sufficient to support only one charge of conspiracy to commit robbery with a dangerous weapon. Defendant was granted a new sentencing hearing for the two attempted breaking and entering convictions. *Lawrence*, ___ N.C. App. at ___, 706 S.E.2d at 836.

promote more uniform application of the law, we now clarify how plain error review applies to unpreserved error in criminal cases under *Odom*.

To properly understand how plain error review functions, it is helpful to be cognizant of its historical development in American jurisprudence, including the advent of the harmless error doctrine. As the Supreme Court of the United States has recognized, "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436 (1986) (citation omitted). To effectuate this central objective, our system of justice has long operated under an adversarial model. *See McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2, 111 S. Ct. 2204, 2210 n.2 (1991). Unlike the inquisitorial model, in which the judge—a neutral decisionmaker—conducts an independent investigation, our adversarial system requires the parties to present their own arguments and evidence at trial. *Id.* As a part of this adversarial process, the parties have an obligation to raise objections to errors at the trial level. *State v. Oliver*, 309 N.C. 326, 334, 307 S.E.2d 304, 311 (1983). Any other approach would place "an undue if not impossible burden . . . on the trial judge." *State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983). Parties therefore must assert a timely objection to preserve error for appellate review. N.C. R. App. P. 10(a)(1); *Walker*, 316 N.C. at 37, 340 S.E.2d at 82.[4] If parties do not timely object, they waive the right to raise the alleged error on appeal. *Oliver*, 309 N.C. at 334, 307 S.E.2d at 311.

Because our courts operate using the adversarial model, we treat preserved and unpreserved error differently. Preserved legal error is reviewed under the harmless error standard of review. N.C.G.S. § 15A-1443 (2009); N.C. R. App. P. 10(a)(1); *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Unpreserved error in criminal cases, on the other hand, is reviewed only for plain error. N.C. R. App. P. 10(a)(4); *Black*, 308 N.C. at 739-41, 303 S.E.2d at 805-07. Because the plain error standard of review imposes a heavier burden on the defendant than the harmless error standard, it is to the defendant's advantage to object at trial and thereby preserve the error for harmless error review. *See Walker*, 316 N.C. at 39, 340 S.E.2d at 83.

The harmless error rule is recognized in both the federal courts and the courts of this State. *See* Fed. R. Crim. P. 52(a); N.C.G.S.

---

4. We note that an error may also be automatically preserved by rule or operation of law. N.C. R. App. P. 10(a)(1); *see also State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). These exceptions to the waiver rule do not apply here.

**STATE v. LAWRENCE**

[365 N.C. 506 (2012)]

§ 15A-1443(a), (b). In both systems harmless error review applies only when the defendant preserves the issue for appeal by timely objecting at trial. *See, e.g., United States v. Olano,* 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993); *see also* N.C.G.S. § 15A-1443(b); *Black,* 308 N.C. at 739-40, 303 S.E.2d at 805-06. When violations of a defendant's rights under the United States Constitution are alleged, harmless error review functions the same way in both federal and state courts: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967); *see also* N.C.G.S. § 15A-1443(b); *State v. Ward,* 354 N.C. 231, 251, 555 S.E.2d 251, 265 (2001) (citations omitted). In other words, an error under the United States Constitution will be held harmless if "the jury verdict would have been the same absent the error." *Neder v. United States,* 527 U.S. 1, 17, 119 S. Ct. 1827, 1837 (1999). Under both the federal and state harmless error standards, the government bears the burden of showing that no prejudice resulted from the challenged federal constitutional error. N.C.G.S. § 15A-1443(b); *O'Neal v. McAninch,* 513 U.S. 432, 437-39, 115 S. Ct. 992, 995-96 (1995). But if the error relates to a right not arising under the United States Constitution, North Carolina harmless error review requires the defendant to bear the burden of showing prejudice. N.C.G.S. § 15A-1443(a). In such cases the defendant must show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Id.*

The United States Supreme Court held that federal constitutional error could be subjected to harmless error review in *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824. Indeed, the Court "has recognized that most constitutional errors can be harmless" and "[do] not automatically require reversal." *Arizona v. Fulminante,* 499 U.S. 279, 306, 111 S. Ct. 1246, 1263 (1991). In a limited class of cases, the Court has also held that "some errors necessarily render a trial fundamentally unfair." *Rose v. Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 3106 (1986). Those errors, called structural error, require automatic reversal regardless of a showing of prejudice, *Fulminante,* 499 U.S. at 309-10, 111 S. Ct. at 1264-65,[5] because they " 'affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial

---

5. The Supreme Court has "found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.' " *Neder,* 527 U.S. at 8, 119 S. Ct. at 1833 (quoting *Johnson v. United States,* 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997)). Those cases are limited to erroneous deprivation of a criminal defendant's

process itself,' " *Neder,* 527 U.S. at 8, 119 S. Ct. at 1833 (quoting *Fulminante,* 499 U.S. at 310, 111 S. Ct. at 1265). Thus, "these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.' " *Neder,* 527 U.S. at 8-9, 119 S. Ct. at 1833 (quoting *Clark,* 478 U.S. at 577-78, 106 S. Ct. at 3106 (alteration in original)). Regardless, most constitutional and nonconstitutional rights may be forfeited if a defendant fails to make a timely objection. *Olano,* 507 U.S. at 731, 113 S. Ct. at 1776.

North Carolina courts also apply a form of structural error known as error per se. *See* N.C.G.S. § 15A-1443(a); *see also, e.g., State v. Parker,* 350 N.C. 411, 421, 426, 516 S.E.2d 106, 114, 117 (1999), *cert. denied,* 528 U.S. 1084, 120 S. Ct. 808 (2000). Like structural error, error per se is automatically deemed prejudicial and thus reversible without a showing of prejudice. *See State v. Brown,* 325 N.C. 427, 428, 383 S.E.2d 910, 910 (1989) (per curiam). It should be emphasized that federal structural error and state error per se have developed independently, as "whether a federal constitutional error can be harmless is a federal question," *Connecticut v. Johnson,* 460 U.S. 73, 81 n.9, 103 S. Ct. 969, 974 n.9 (1983), while "a state court is entirely free to read its own State's constitution more broadly than [the United States Supreme Court] reads the Federal Constitution, or to reject the mode of analysis used by [the United States Supreme Court] in favor of a different analysis of its corresponding constitutional guarantee," *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S. Ct. 1070, 1077 (1982) (citations omitted).

We come now to the proper standard of review to be applied in the instant case—plain error. Plain error review allows appellate courts to alleviate the potential harshness of preservation rules. *Odom,* 307 N.C. at 660, 300 S.E.2d at 378. Although the Supreme Court adopted plain error review in 1936, *United States v. Atkinson,* 297 U.S. 157, 56 S. Ct. 391 (1936),[6] this Court did not recognize the plain

---

choice of counsel, *United States v. Gonzalez-Lopez,* 548 U.S. 140, 126 S. Ct. 2557 (2006); defective reasonable doubt jury instructions, *Sullivan v. Louisiana,* 508 U.S. 275, 113 S. Ct. 2078 (1993); racial discrimination in the selection of the grand jury, *Vasquez v. Hillery,* 474 U.S. 254, 106 S. Ct. 617 (1986); denial of a public trial, *Waller v. Georgia,* 467 U.S. 39, 104 S. Ct. 2210 (1984); denial of the right of self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168, 104 S. Ct. 944 (1984); complete denial of counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963); and trial by biased judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S. Ct. 437 (1927).

6. We note that the Supreme Court had previously recognized the concept of plain error in *Wiborg v. United States,* 163 U.S. 632, 658, 16 S. Ct. 1127, 1137 (1896),

error doctrine until its 1983 decision in *State v. Odom.* Since that time, the federal plain error standard and this State's plain error standard have developed somewhat differently. Nonetheless, because this Court relied heavily on the federal standard when it adopted plain error review, we will discuss how the federal standard has evolved since *Odom.*

Federal plain error review is applied to criminal cases in "exceptional circumstances." *See Atkinson,* 297 U.S. at 160, 56 S. Ct. at 392. Originally, the doctrine permitted federal courts to take notice of errors for which no objection or exception had been made when "the errors [were] obvious, or if they otherwise seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* Federal plain error review was subsequently codified in what is now Rule 52(b) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). The United States Supreme Court previously held that the rule is primarily concerned with ensuring the "fundamental fairness of the trial" and preventing "miscarriage[s] of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S. Ct. 1038, 1047 (1985) (citations omitted).

The Court later refined federal plain error review by creating a four-factor test to determine whether an error is reversible plain error and thus noticeable on appeal. *See Olano,* 507 U.S. at 732-37, 741, 113 S. Ct. at 1776-78, 1781; *see also Puckett v. United States,* 556 U.S. 129, ——, 129 S. Ct. 1423, 1429 (2009). First, there must be an error—that is, a "[d]eviation from a legal rule . . . unless the rule has been waived." *Olano,* 507 U.S. at 732-33, 113 S. Ct. at 1777 (noting that "[w]aiver is different from forfeiture," as forfeiture "does not extinguish an 'error' "). Second, the error must be plain, which is "synonymous with 'clear' or . . . 'obvious.' " *Id.* at 734, 113 S. Ct. at 1777. In other words, the error must be clear under current law at the time of trial or appellate consideration. *Johnson v. United States,* 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997). Third, the error must affect a substantial right. *Olano,* 507 U.S. at 734, 113 S. Ct. at 1777-78. To affect a substantial right, the error ordinarily must be prejudicial, meaning it affected the outcome at trial. *Id.; Puckett,* 556 U.S. at ——,

---

and *Clyatt v. United States,* 197 U.S. 207, 221-22, 25 S. Ct. 429, 432 (1905). This standard appears to be focused on whether a miscarriage of justice occurred as a result of the error. Jeffrey L. Lowry, Note, *Plain Error Rule—Clarifying Plain Error Analysis Under Rule 52(b) of the Federal Rules of Criminal Procedure,* 84 J. Crim. L. & Criminology 1065, 1079 (1994).

129 S. Ct. at 1429. This third prong is similar to the harmless error standard of review, except the plain error standard requires the defendant, not the government, to bear the burden of showing prejudice. *Olano*, 507 U.S. at 734, 113 S. Ct. at 1778. Finally, federal plain error is a "permissive" rule, *id.* at 735, 113 S. Ct. at 1778, which means the appellate court should not always reverse solely because an error amounts to plain error under the first three prongs, *id.* at 736-37, 113 S. Ct. at 1779. Instead, for an appellate court to intervene, a fourth prong must be satisfied: The error must " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736-37, 113 S. Ct. at 1779 (quoting *Atkinson*, 297 U.S. at 160, 56 S. Ct. at 392). While a miscarriage of justice, most often meaning actual innocence, would likely satisfy this standard, an error may also satisfy the standard "independent of the defendant's innocence." *Id.* at 736-37, 113 S. Ct. at 1779. The standard recognized in *Atkinson* is unlikely to be satisfied, however, when evidence of the defendant's guilt is overwhelming. *See United States v. Cotton*, 535 U.S. 625, 634, 122 S. Ct. 1781, 1787 (2002) (stating that "[t]he real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if [the defendant], despite the overwhelming and uncontroverted evidence [of guilt]," had the conviction overturned on appeal).

Like federal plain error review, the North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error. *See State v. Melvin*, 364 N.C. 589, 593-94, 707 S.E.2d 629, 632-33 (2010) (citation omitted). To have an alleged error reviewed under the plain error standard, the defendant must "specifically and distinctly" contend that the alleged error constitutes plain error. N.C. R. App. P. 10(a)(4); *see also State v. Dennison*, 359 N.C. 312, 312-13, 608 S.E.2d 756, 757 (2005) (per curiam). Furthermore, plain error review in North Carolina is normally limited to instructional and evidentiary error. *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002), *cert. denied*, 537 U.S. 1117, 123 S. Ct. 882 (2003).

In our seminal plain error case, we cited to the federal standard and recognized the following approach to plain error review:

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that

justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (alterations in original) (quoting *United States v. McCaskill,* 676 F.2d at 1002 (4th Cir.) (footnotes omitted)).

This Court and the United States Supreme Court have emphasized that plain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error:

The adoption of the "plain error" rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial. To hold so would negate Rule 10(b)(2) which is not the intent or purpose of the "plain error" rule. *See United States v. Ostendorff,* 371 F.2d 729 (4th Cir.), *cert. denied,* 386 U.S. 982, 18 L. Ed. 2d 229, 87 S. Ct. 1286 (1967). The purpose of Rule 10(b)(2) is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial. Indeed, even when the "plain error" rule is applied, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736 (1977).

*Odom,* 307 N.C. at 660-61, 300 S.E.2d at 378 (alteration in original). Both courts have continued to embrace this guiding limitation.

Historically, in conducting plain error review, our appellate courts have considered whether the error was prejudicial and whether it resulted in a miscarriage of justice. In determining whether an error was prejudicial, our courts have "examine[d] the entire record [to] determine if the . . . error had a *probable* impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 379 (citations omitted) (emphasis added); *see also Bishop,* 346 N.C. at 385, 488 S.E.2d at 779-80; *Walker,* 316 N.C. at 39, 340 S.E.2d at 83. Courts have also

noted that plain error may exist when the error is "so fundamental as to amount to a miscarriage of justice," *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 108 S. Ct. 1598 (1988).

We now reaffirm our holding in *Odom* and clarify how the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (citations and quotation marks omitted); *see also Walker*, 316 N.C. at 39, 340 S.E.2d at 83 (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error). Moreover, because plain error is to be "applied cautiously and only in the exceptional case," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *McCaskill*, 676 F.2d at 1002).

Having described the potential paths preserved and unpreserved errors can take on appeal and discussed the federal and North Carolina plain error standards of review, we turn to the present case. The State alleges that the Court of Appeals applied an incorrect standard of plain error review by examining whether the erroneous jury instruction was likely to mislead the jury. The State further contends that if the Court of Appeals had applied the correct standard, defendant would not have met his burden of showing that the erroneous jury instruction amounted to plain error.

It is uncontested that the trial court's charge on conspiracy to commit robbery with a dangerous weapon was erroneous under *State v. Gibbons*, 303 N.C. 484, 279 S.E.2d 574. Because defendant did not object at trial, we review for plain error. To establish plain error, defendant must show that the erroneous jury instruction was a fundamental error—that the error had a probable impact on the jury verdict. In its reliance on *State v. Blizzard*, 169 N.C. App. 285, 610 S.E.2d 245, the Court of Appeals applied an incorrect formulation of the plain error standard of review.

Defendant cannot meet his burden of showing that the error amounted to plain error. The trial court correctly instructed the jury on the elements of attempted robbery with a dangerous weapon. The jury convicted defendant of that offense. Therefore, the only additional element necessary to convict defendant of conspiracy to commit robbery with a dangerous weapon was that he entered into an agreement to do so. The evidence against defendant is overwhelming. The record contains testimony by multiple witnesses describing the efforts of the group, which included defendant, to kidnap, threaten, and rob Ms. Curtis. Two of those witnesses were co-conspirators. Those co-conspirators testified that defendant "knew what was going on." Defendant knew that the group was attempting to rob the homes of purported drug dealers. He knew that the group planned to use zip ties to restrain Ms. Curtis. He knew that the group planned to threaten Ms. Curtis with their firearms to force her to reveal where the money was located. He knew that they would douse her with gasoline and threaten to ignite her if that did not work. In sum, defendant knew the details of the plan, including what being "the muscle" entailed. After all, upon learning of the plan, he volunteered that he already had a gun. Through his interactions with the group, defendant conspired to commit robbery with a dangerous weapon. The evidence, including the testimony of two co-conspirators, clearly establishes that defendant and the rest of the group attempted to carry out their plan to rob Ms. Curtis over a two-day period.

In light of the overwhelming and uncontroverted evidence, defendant cannot show that, absent the error, the jury probably would have returned a different verdict. Thus, he cannot show the prejudicial effect necessary to establish that the error was a fundamental error. In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings.

For the foregoing reasons, defendant has failed to meet his burden of demonstrating plain error. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.