An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-9
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.

RONALD CRAIG SHOATS

Cleveland County
Nos. 11 CRS 51589-90

Appeal by Defendant from Judgments entered 23 July 2013 by Judge William R. Bell in Cleveland County Superior Court. Heard in the Court of Appeals 23 June 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Donna B. Wojcik, for the State.*

*Sarah Holladay for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

Defendant Ronald Craig Shoats appeals from judgments entered based upon jury verdicts finding him guilty of possession of cocaine with the intent to sell or deliver, the sale or delivery of cocaine, possession of hydrocodone with intent to sell or deliver, and the sale or delivery of hydrocodone. The trial court consolidated Defendant's

convictions into two judgments and sentenced him to consecutive terms of 20 to 24 and 25 to 30 months imprisonment. Defendant gave notice of appeal in open court.

At trial, the State's evidence tended to show that, on 5 January 2011, officers of the Cleveland County Sheriff's Department conducted a controlled buy of hydrocodone pills from Defendant with the assistance of Gary Richard Smart, a confidential informant and cooperating witness. During the controlled buy, Smart asked Defendant if Defendant could provide him with powder cocaine. Defendant stated he could provide Smart with the cocaine, and, on 21 January 2011, officers and Smart set up a controlled buy of powder cocaine from Defendant. At trial, Smart testified that he had purchased hydrocodone pills from Defendant approximately ten times in the four months preceding the date of the first controlled buy.

*Discussion*

Defendant's sole argument on appeal is that the trial court erred when it admitted testimony that Defendant had previously sold hydrocodone pills to Smart. Defendant contends that the admission of this testimony violated rules 403 and 404(b) of the North Carolina Rules of Evidence. We find no error.

Because Defendant failed to object to Smart's testimony at trial, we review this issue only for plain error. N.C.R. App. P. 10(a)(4); *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008). To establish plain error, a defendant must

> demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and internal quotation marks omitted; certain alterations in original). Even assuming it was error for the trial court to admit Smart's testimony about the previous purchases, we conclude that any such error did not have a probable impact on the jury's verdict.

According to the State's evidence, the 5 January 2011 purchase of hydrocodone occurred in the parking lot of a McDonald's restaurant. Smart drove to the McDonald's in a red pickup truck accompanied by an undercover officer who sat in the truck's passenger seat and observed the entire transaction.

Smart parked next to Defendant, who was waiting in a white Lexus. Defendant walked over to the driver's side of Smart's truck and gave Smart a pill bottle containing forty hydrocodone pills in exchange for $200. A second officer witnessed the transaction from inside the McDonald's restaurant.

The purchase of cocaine on 21 January 2011 occurred at a truck stop. Smart drove to the truck stop and again parked next to Defendant's white Lexus. Smart got out of his truck, walked to Defendant's door, and gave Defendant $175 in exchange for 3.2 grams of cocaine. An officer witnessed this transaction from a nearby fuel pump.

Smart testified that Defendant was the person who sold him hydrocodone on 5 January 2011 and cocaine on 21 January 2011. In addition, an audio recording of the 5 January 2011 transaction was made and a video recording of the 21 January 2011 transaction was made. Both recordings were played to the jury. Further, both transactions were witnessed by officers as they occurred, and the officers identified Defendant as the seller of the narcotics.

Defendant challenges the above evidence by arguing that the recordings and officers' testimony were not sufficient to prove his identity. Specifically, Defendant asserts that the 5 January

2011 recording was deficient because it was "at times muffled, crackling, and difficult to hear" and the 21 January 2011 recording was deficient because it was "so grainy that the jury would have struggled to identify the man shown as the defendant." Defendant also notes that "[n]o officers accompanied . . . Smart to the [21 January] buy" and the officers who were there had an obscured view of the transaction. We are unpersuaded.

Regarding the 5 January transaction, the officer who participated in the transaction testified that the voices in the recording were those of Smart and Defendant. The officer also explained that their conversation dealt with "the weight of the powder" and resulted in the sale of "forty hydrocodone pills . . . [by Defendant to] Smart." A second officer, who observed the transaction, testified as follows:

> [Second Officer]: We arrived at McDonald's . . . . We noticed a white Lexus pull up and a little bit after that, [a] black male got out of the Lexus. I want to think that . . . Smart was in [the] red truck. I think it was a red truck. It was a — I observed a red Chevrolet extended cab truck back into a parking space beside the white Lexus.
>
> [Prosecutor]: Was [the participating officer] in the red truck?
>
> [Second Officer]: He was.

[Prosecutor]: What did you observe between the individuals in these vehicles?

[Second Officer]: I observed a black male with a brown had [sic], brown jacket, wearing glasses in the driver's seat of the white Lexus. The driver's door opened and the black male's feet were on the asphalt.

. . .

[Prosecutor]: What did you do next?

[Second Officer]: A short time later, you know, the cooperating witness and [the participating officer], I believe they backed in right beside the white Lexus. I think the exchange was made, and they left, both left.

[Prosecutor]: Who was the exchange made between?

[Second Officer]: Gary Smart and [Defendant].

Given the testimony of both officers, any difficulty the jury experienced in hearing and understanding the recording is irrelevant as there was ample other evidence to establish Defendant's identity as the person who sold the hydrocodone pills to Smart. Accordingly, Defendant's argument as it pertains to the 5 January transaction is overruled.

Regarding the 21 January transaction, a third officer, who observed the controlled purchase, testified that the video (1) depicted "[t]he deal [between Defendant and Smart for the sale

of powder cocaine] taking place" and (2) included discussions "about possibly making future deals for cocaine and also [other] pills." The second officer, who also observed the 21 January transaction, testified as follows:

> [Prosecutor]: What did you do [on 21 January 2011]?
>
> [Second Officer]: I drove to the parking lot of the truck stop and sat near a fuel pump where I could watch the buy take place.
>
> [Prosecutor]: What did you observe on that date?
>
> [Second Officer]: I seen [sic] a white Lexus parked toward the far pump, and [Smart] pulled up beside him to make the purchase.
>
> [Prosecutor]: Did you observe anything?
>
> [Second Officer]: [Smart] got out of his vehicle and met [Defendant] at the driver's side door of his vehicle. I believe the door was open on . . . the Lexus.
>
> [Prosecutor]: What happened next?
>
> [Second Officer]: Once the deal was done, . . . Smart met us back at the location . . . [and returned] the drugs and equipment.

Only the third officer described having an obscured view of the transaction, testifying that he observed "Smart pull into the parking lot, but as far as where he parked, we could not see." Even assuming this testimony supports Defendant's assertion that

the third officer's ability to see was "obscured," it has no bearing on the testimony of the second officer, who explicitly stated that he was parked in a place where he "could watch." Accordingly, Defendant's argument as it pertains to the 21 January transaction is overruled.

We conclude that the evidence of Defendant's guilt was overwhelming and, consequently, that Smart's testimony regarding the prior purchases of hydrocodone did not have a probable impact on the jury's verdict. Therefore, the trial court did not commit plain error in admitting Smart's testimony.

NO ERROR.

Judges HUNTER, ROBERT C., and ERVIN concur.

Report per Rule 30(e).