IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-951

Filed: 7 April 2020

Mecklenburg County, No. 16CRS238807

STATE OF NORTH CAROLINA

v.

JOSHUA KOIYAN, Defendant.

Appeal by Defendant from judgment entered 3 May 2019 by Judge Donnie Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 March 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Tien Cheng, for State-Appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Katz, for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty of robbery with a dangerous weapon. Defendant argues that the trial court plainly erred by admitting expert testimony because the testimony did not demonstrate that the expert applied accepted methods and procedures reliably to the facts of the case. We discern no plain error.

**I. Background**

On 24 October 2016, a grand jury indicted Defendant Joshua Koiyan for robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87. On 29 April 2019, Defendant's case came on for trial. The evidence at trial tended to show: On 12 October 2016, two employees were working at a Boost Mobile store in Charlotte, North Carolina. The employees were Ana Torres and Guadalupe Morin, both of whom worked the floor of the store as sales representatives. That afternoon, both observed a young man—later identified as Defendant—enter the Boost Mobile store; Defendant wandered the store for approximately 45 minutes and repeatedly asked the employees whether the store sold iPhones. Torres noticed that Defendant seemed nervous and she became suspicious that something was going to happen; in light of her suspicion, Torres took all of the money out of her cash register except for the dollar bills and hid the money. Torres also took pictures of Defendant with her personal cell phone while he spoke with Morin.

Approximately 45 minutes after Defendant entered the store, and after all other customers had exited, Defendant pulled out a silver gun and jumped over the counter. Defendant ordered Morin to open the cash registers, and then told both women to go to the corner while he put the money into a plastic bag. Defendant then took Torres' purse, which contained two of her cell phones, her passport, her jewelry, and her wallet, along with several display phones. Defendant told the women, "I'm not going to hurt you all today because you all are being good," jumped back over the

counter, and ran out of the store. Torres followed Defendant out of the store but lost sight of him, and then called 911.

Charlotte Mecklenburg Police Officers Kelly Zagar and David Batson arrived at the store within four to five minutes. Torres provided them with a description of Defendant, explaining that he was: a black male; approximately 5'7" tall; skinny build; wore a black visor, black hoody, and jeans; and looked to be about 20 years old. Zagar secured the crime scene for evidence and called the Charlotte Mecklenburg Crime Scene Search. Keywana Darden, an investigator with the Crime Scene Search team, collected, documented, and preserved all of the evidence found at the store. The evidence included surveillance footage taken from cameras located inside the Boost Mobile store and photographs of the scene. Darden also dusted areas throughout the store and obtained latent fingerprints from the scene. Torres also gave the officers the photographs she took of Defendant while he was in the store. Those photographs were later obtained by the news media and broadcasted to the public.

On 14 October 2016, two days after the robbery, Defendant was apprehended and arrested by the Charlotte Mecklenburg police. Torres independently viewed Defendant's mugshot online but did not participate in a photographic or in-person lineup.

During the trial, Torres testified for the State and identified Defendant as being the individual who committed the armed robbery of the Boost Mobile store.

Prior to trial, Defendant filed a motion to suppress Torres' in-court identification, arguing that Torres could not make an identification of him until just one week before trial. Defendant argued that Torres admitted to viewing his mugshot prior to the trial and thus could not independently identify him as the perpetrator. The trial court denied Defendant's motion to suppress, and Torres identified Defendant at trial in the presence of the jury.

Todd Roberts, a latent fingerprint examiner with the State of North Carolina, testified as an expert witness at trial. Roberts testified to his education, training in the field of latent fingerprint analysis, and his conclusion that the latent fingerprints found at the Boost Mobile store were a match to Defendant's fingerprints.

On 3 May 2019, the jury found Defendant guilty of robbery with a firearm. The trial court sentenced Defendant to 45-66 months' imprisonment. Following judgment, Defendant gave oral notice of appeal.

## II. Discussion

Defendant's sole argument on appeal is that the trial court plainly erred by admitting Roberts' expert opinion that Defendant's fingerprints matched the latent fingerprints left at the Boost Mobile store because Roberts' testimony did not demonstrate that he applied accepted methods and procedures reliably to the facts of this case.

Defendant acknowledges his failure to object to Roberts' testimony at trial but specifically argues plain error on appeal. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). In order to show fundamental error, a defendant must establish prejudice—that the error "had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quotation marks and citation omitted). Accordingly, we review whether the trial court erred in admitting Roberts' testimony for plain error.

It is the trial court's role to decide preliminary questions concerning the admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2019). Rule 702 of the North Carolina Rules of Evidence governs testimony by experts. Pertinent to Defendant's argument, Rule 702 provides as follows:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> > (1) The testimony is based upon sufficient facts or data.
> >
> > (2) The testimony is the product of reliable principles and methods.
> >
> > (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2019). Prongs (a)(1), (2), and (3) together constitute the reliability inquiry discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *State v. McGrady*, 368 N.C. 880, 890, 787 S.E.2d 1, 9 (2016). "The primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions that they generate[.]" *Id.* (internal quotation marks and internal citations omitted). However, "conclusions and methodology are not entirely distinct from one another[;]" thus, when the "analytical gap between the data and the opinion proffered" is too great, the trial court is not required to admit the expert opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Id.* (internal quotation marks and citation omitted).

In *State v. McPhaul*, 256 N.C. App. 303, 314, 808 S.E.2d 294, 304 (2017), this Court recently examined expert testimony regarding latent fingerprint analysis under the three-prong reliability test set forth in *McGrady*. In *McPhaul*, the State's expert witness testified that she had worked as a print examiner for more than nearly a decade; explained that each fingerprint contains distinguishing characteristics called "minutia"; and testified that it was possible to identify the source of a latent print by comparing the print to an individual's "known impressions" and evaluating the "minutia points." *Id.* She further explained that she uses an optic camera to

compare the minutia points and examine the print pattern type, and she stated that the procedures she followed were commonly used in the field of fingerprint identification. *Id.* at 315, 808 S.E.2d at 304.

However, when the expert testified to her ultimate conclusions, the expert was "unable to establish that she reliably applied the procedure to the facts of this case[.]" *Id.* The expert concluded that the latent print matched the defendant's fingerprints, and stated that she based that conclusion on her "training and experience." *Id.* The State asked the expert whether her other conclusions were based upon "the same procedure" she described to the jury, and the expert stated that was correct. *Id.* at 316, 808 S.E.2d at 305. This Court determined that the expert's testimony was insufficient and failed to satisfy Rule 702's three-pronged reliability test because the testimony failed to show that the expert "reliably applied that methodology to the facts of the case" and failed to explain "how she arrived at her actual conclusions *in this case.*" *Id.* As the expert's testimony "implicitly asked the jury to accept her expert opinion that the prints matched[,]" this Court determined the testimony insufficient and held that the trial court erred by admitting the testimony. *Id.*

We determine that the testimony here is similar to the testimony in *McPhaul* and hold that Roberts' testimony failed to demonstrate how he arrived at his conclusion that Defendant's fingerprints matched the fingerprints left at the Boost Mobile store. On direct examination, Roberts first explained that he was a latent

fingerprint examiner, had worked in the field for more than 14 years, and that his primary responsibilities were to "evaluate, compare, and attempt to identify latent [fingerprint] lifts collected by a crime scene investigator . . . to its individual[.]" Roberts has degrees in "correctional and juvenile services and criminal justice," two years of in-house training with the State Crime Lab, and has been trained in "logical latent analysis, advanced palm print comparison techniques, forensic ridgeology, and fingerprint comparisons." At the time of trial in this case, Roberts had testified as an expert witness in latent fingerprint identification more than 75 times in state and federal courts and estimated that he had identified and analyzed "tens of thousands" of fingerprints.

Roberts explained that he examines fingerprints by looking for three levels of detail, with "level 1 being the basic just ridge flow. The level 2 detail is what we use for identification, that is, consists of ending ridges and bifurcations and their spatial relationship to each other. And then the level 3 [] detail is more on the microscopic level, but it's actually the structure of the ridge. It's the pores located within the ridge[.]" Roberts explained that he takes the latent fingerprints, puts it beside an inked fingerprint, magnifies the prints, and examines the likenesses or dissimilarities. Roberts testified that an example of "level 1 detail . . . is a right loop, meaning that the ridge is just coming from the right side of the finger. They loop around the core and then back out the right side." "[L]evel 2 detail . . . , they're located

within the print . . . . The ending ridges and the bifurcations is what makes that print unique. There are places that you can see a bifurcation come over to another bifurcation, creating an enclosure." "The level 3 detail . . . includes the pores within the print. . . . [T]hose holes that are in the ridge are pores, they're actually in the top of ridge, and that's what secretes sweat, allows the fingerprint to print. That is the level 3 detail." This testimony sufficiently explained Roberts' qualifications, training, and expertise, and showed that Roberts uses reliable principles and methods.

However, Roberts testified to his conclusions later on direct examination:

> [State]: The latent-print cards that were in State's Exhibit 6, did you compare those to [Defendant's prints] that were State's Exhibit 11?
>
> [Roberts]: Yes, ma'am.
>
> [State]: Did any of those latent prints match [Defendant's] prints?
>
> [Roberts]: They did.
>
> [State]: Which ones?
>
> [Roberts]: 2-4-2, 2-4-3, 2-4-4, and then 2-11-1. All were identified to [Defendant].

Pursuant to Rule 702, this testimony is insufficient as it fails to show that Roberts applied accepted methods and procedures reliably to the facts of this case in order to reach his conclusion that the fingerprints were a match. While Roberts testified earlier that he generally examines prints for "three levels of detail" and looks for "ridges and bifurcations and their spatial relationship" on each print, Roberts

failed to provide any such detail when testifying as to *how* he arrived at his conclusions *in this case*. Moreover, he never explained what—if any—characteristics from the latent fingerprints matched with Defendant's fingerprints. Instead, when asked whether any of the prints matched, Roberts merely stated that they did and provided no further explanation for his conclusions. Like in *McPhaul*, Roberts' testimony had the impermissible effect of "implicitly ask[ing] the jury to accept [his] expert opinion that the prints matched." *McPhaul*, 256 N.C. App at 316, 808 S.E.2d at 305. As Roberts failed to demonstrate that he "applied the principles and methods reliably to the facts of the case," as required by Rule 702(a)(3), we determine that the trial court erred by admitting the testimony.

However, under plain error review, we do not conclude that the trial court plainly erred by admitting the testimony. Defendant cannot show that he was prejudiced as a result of this error because of the otherwise overwhelming evidence that he was the perpetrator of the robbery.

Torres provided two photographs of Defendant, which she took with her cell phone while Defendant was in the Boost Mobile store, and the State entered the photographs into evidence and published them to the jury. Torres also provided testimony that Defendant was the individual who robbed her and the Boost Mobile store. The State entered into evidence the surveillance video footage taken from the store, played the video for the jury, and Torres identified Defendant when he

appeared on screen. Torres further identified Defendant by pointing him out in the courtroom as the perpetrator of the robbery, and stated that she was "a hundred percent" certain that Defendant was the person who robbed her. Torres noted that she spent nearly 45 minutes with Defendant while he robbed the Boost Mobile store, and that she would not "forget his face."

Altogether, Torres' testimony and in-court identification of Defendant, along with the photographs of Defendant and surveillance video footage showing Defendant rob the Boost Mobile store, provided sufficient evidence that Defendant was the perpetrator of the robbery. In light of this overwhelming evidence, we are not persuaded by Defendant's argument that the trial court's error was so great as to have had "a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). As such, we conclude that the trial court's admission of Roberts' expert testimony was not plain error.

NO PLAIN ERROR.

Judges DILLON and BROOK concur.