An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-260

Filed 6 August 2025

Guilford County, Nos. 18CRS81427-400, 18CRS81428-400, 18CRS81567-400, 18CRS81568-400, 18CRS90475-400, 22CRS26017-400

STATE OF NORTH CAROLINA

v.

HYKEEM MARQUIS SIMMONS

Appeal by defendant from judgment entered 19 January 2023 by Judge David L. Hall in Guilford County Superior Court. Heard in the Court of Appeals 23 April 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Francisco Benzoni, for the State.*

> *Kimberly P. Hoppin for defendant-appellant.*

PER CURIAM.

Defendant Hykeem Marquis Simmons was convicted of multiple crimes, arising from an incident in which he allegedly fired a weapon towards a house, wounding a man and killing a pregnant woman. For the reasoning below, we conclude Defendant receive a fair trial, free of reversible error.

I.    Background

The State's evidence tends to show as follows:  On 6 August 2018, there was a drive-by shooting at a house in High Point.  Corey Ray, who was sitting on the front porch, was shot, but he survived.  Corey's niece Anastasia Ray, who was eight months pregnant, was inside the home.  She was fatally shot.  Her unborn baby also died as a result.

Defendant was convicted by a jury of first-degree murder (for killing Anastasia), murder of an unborn child (for killing her unborn child), discharging a weapon into occupied property (for firing into the occupied home), assault with a deadly weapon with intent to kill inflicting serious injury (for shooting Corey), possession of a firearm by a felon (for both a rifle and handgun), and possession of a weapon with a defaced or destroyed serial number (for the rifle).  Defendant was sentenced based on the jury's verdict, which included two consecutive terms of life in prison without the possibility of parole for the first-degree murder conviction and the murder of an unborn child conviction.  Defendant appeals.

II.    Analysis

Defendant presents three issues on appeal, which we address in turn.

A. Witness Identification of Defendant

Corey Ray identified Defendant as the shooter multiple times during the investigation.  Defendant challenges two of those identifications.

First, Defendant challenges a pre-trial identification.  Three days after the

shooting, a detective interviewed Corey in the hospital. Corey previously saw a picture of Defendant on his probation officer's computer. During the hospital interview, Corey named Defendant as the shooter. The detective then showed Corey a picture of Defendant, and Corey confirmed he was the shooter.

At trial, Defendant objected to the detective's testimony, arguing it was prejudicial under Rule 403 for law enforcement to show a single photograph to a witness and ask if the photographed person was the shooter.[1] The trial court allowed the State to ask the detective about showing Corey a single photograph of Defendant in the hospital and Corey identifying the photographed person (Defendant) as the shooter. However, the trial court ruled the State could not ask about Corey's "degree of confidence [that the photographed person was the shooter] . . . because that would associate with a photo lineup of an unknown subject."

"Rulings under [Rule 403] are discretionary, and a trial court's decision on motions made pursuant to Rule 403 are binding on appeal, unless the dissatisfied party shows that the trial court abused its discretion." *State v. Chapman*, 359 N.C. 328, 348 (2005) (citations omitted). "A trial court will not be reversed for an abuse of discretion absent 'a showing that its ruling was so arbitrary that it could not have

---

[1] On appeal, Defendant argues that showing Corey the single photograph of Defendant, rather than showing a lineup of potential suspects, violated his Due Process rights. We do not address Defendant's due process argument, as Defendant raises this argument for the first time here on appeal. *See State v. Lloyd*, 354 N.C. 76, 86−87 (2001) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."). Defendant asks our Court to invoke Rule 2 to consider his due process argument. We decline.

been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 46 (2000) (citations omitted).

Here, the trial court did not abuse its discretion in allowing the detective's testimony about Corey's photographic identification of Defendant. Corey first identified Defendant as the shooter *prior to* viewing the photograph. Accordingly, there was little danger of unfair prejudice by allowing the detective to testify that Corey then confirmed Defendant was the man in the photograph.

Defendant also challenges Corey's in-court identification of Defendant as the shooter. During trial, Corey again identified Defendant as the shooter by pointing him out in the courtroom. Because Defendant did not object to this identification, we review for plain error. *See State v. Lawrence*, 365 N.C. 506, 516 (2012).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty."

*Id.* at 518 (citations omitted). "[T]he analysis is whether, without that evidence, the jury probably would have reached a *different* result." *State v. Reber*, 386 N.C. 153, 160 (2024).

Here, we cannot say that the jury probably would not have convicted Defendant without Corey's courtroom identification. There was other evidence pointing to Defendant as the shooter. Notably, police found the murder weapon in

Defendant's car and identified Defendant's DNA on the weapon. Accordingly, assuming there was error committed by the trial court, any such error did not rise to the level of plain error.

### B. Murder of Unborn Child Charge

Defendant argues the trial court erred in failing to dismiss the murder of an unborn child charge. As described below, the relevant statute sets out three alternate theories upon which the State may rely to support a conviction. Here, Defendant argues the State failed to produce sufficient evidence to support the theory under which he was indicted, which required proof he knew Anastasia was pregnant. (Indeed, the evidence shows that Defendant was targeting Corey Ray and that Anastasia was an innocent bystander caught in the fire.)

Defendant was charged with the murder of an unborn child under N.C.G.S. § 14-23.2(a). That statute sets out three alternate theories under which a defendant may be convicted of the crime, as follows:

> [a] person who unlawfully causes the death of an unborn child is guilty of the separate offense of murder of an unborn child if the person does any of the following:
>
> (1) Willfully and maliciously commits an act with the intent to cause the death of an unborn child.
>
> (2) Causes the death of the unborn child in perpetration or attempted perpetration of any of the criminal offenses set forth under G.S. 14-17.
>
> (3) Commits an act causing the death of the unborn child that is inherently dangerous to human life and

> is done so recklessly and wantonly that it reflects disregard of life.

N.C.G.S § 14-23.2(a). In Section 14-23.8, our General Assembly has essentially provided that *only if* the State proceeds under the first theory—set forth in subsection (1) of Section 14-23.2(a)—must the State prove the defendant knew or should have known his victim was, indeed, pregnant:

> Except for an offense under G.S. 14-23.2(a)(1), an offense under this Article does not require proof of either of the following:
>
> (1) The person engaging in the conduct had knowledge or should have had knowledge that the victim of the underlying offense was pregnant.
>
> (2) The defendant intended to cause the death of, or bodily injury to, the unborn child.

N.C.G.S. § 14-23.8.

Here, the warrant for Defendant's arrest clearly alleged Defendant acted under the second theory codified in subsection (2), which does not require proof he knew Anastasia was pregnant. Specifically, the warrant alleges that he:

> unlawfully, willfully and feloniously did cause the death of an unborn child in the perpetration of any of the criminal offenses set forth under G.S. 14-17 to wit: causing the death of Anastaisa [sic] Ray's unborn child during the murder of Anastaisa [sic] Ray.

Thus, the warrant alleged a crime under Section 14-23.2(a)(2).

The language in the indictment, however, tends to suggest that the State was proceeding under the theory in subsection (1), which *does* require the State to prove

Defendant knew Anastasia was pregnant. Specifically, the indictment alleges that

Defendant:

> unlawfully, willfully and feloniously did cause the death of
> a male child carried by Anastasia Ray, an unborn child, by
> unlawfully and maliciously committing an act, shooting
> Anastasia Ray in the neck/torso, *with the intent to cause
> death of the unborn child*.

(Emphasis added.)

At trial, however, the State did not present any evidence Defendant knew or

should have known of Anastasia's pregnancy. During the trial, Defendant did move

to dismiss but did not expressly argue the lack of evidence to show his knowledge of

Anastasia being pregnant.[2]

In any event, during the charge conference, the trial court instructed the jury,

in part, that they could convict Defendant of the crime if they found that Defendant

*either* maliciously intended to kill the unborn baby *or* maliciously intended to kill

another resulting in the death of the unborn baby. The State requested this language,

and Defendant did not object.

For the reasoning below, we conclude that any error committed by the trial

court leading to the conviction of Defendant for murder of an unborn child was not

---

[2] At trial, Defendant moved to dismiss all charges for insufficient evidence that he was the shooter (i.e., the identity of the perpetrator element). Even though Defendant now argues on appeal that there was insufficient evidence to prove a different element (i.e., the knowledge element), Defendant's motion to dismiss preserved all issues related to the sufficiency of the State's evidence. *See State v. Golder*, 374 N.C. 238, 246 (2020).

prejudicial.

First, we conclude the trial court had jurisdiction to conduct the trial against Defendant for the crime, as the language contained in the indictment charges the crime of murder of an unborn child. *See State v. Singleton*, 386 N.C. 183, 184 (2024).

Next, we conclude Defendant was not prejudiced by the indictment language. It is true that the indictment contains language that invokes subsection (1) of Section 14-23.2(a), that Defendant acted "with the intent to cause the death of an unborn child." However, the indictment also contains language that invokes subsection (2), that the death of the unborn child was caused by him committing the act of murder under G.S. 14-17 by "unlawfully and maliciously . . . shooting Anastasia Ray in the neck/torso," a crime for which he was convicted at the same trial.

The purpose of an indictment is to identify the crime being charged such that "the accused [has] reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Stewart*, 386 N.C. 237, 241 (2024). Assuming there was a variance between the language in the indictment and the jury charge, we have explained that whether the variance is fatal—and, therefore, reversible—turns on whether the defendant was able to prepare his defense and whether he is protected from being tried again for the same crime. *See State v. Glidewell*, 255 N.C. App. 110, 113 (2017).

Here, assuming that the language in the indictment is defective, Defendant has failed to show prejudice. First, we note that Defendant's warrant is clear in

stating that Defendant was being arrested for the death of the unborn baby *based on* his malicious killing of Anastasia. Further, we note Defendant prepared a defense based on the theory that he maliciously attacked Anastasia, as he was charged with, defended against, and was convicted of murdering Anastasia. Finally, assuming Defendant believed the State was proceeding under subsection (1) rather than subsection (2) of Section 14-23.2, it is not reasonably possible Defendant would have sought a plea bargain, as the punishment for a conviction under subsection (1) is the same as a conviction under subsection (2). *See* N.C.G.S. § 14-23.2(b)(1) (providing that any person convicted under either (a)(1) or (a)(2) "shall be punished with imprisonment . . . for life without parole").

Finally, we note the jury was essentially instructed they could convict Defendant under subsection (1) where it was expressly instructed it could convict Defendant if it found the unborn baby's death was caused by Defendant's malicious killing of another. And he was convicted of maliciously killing Anastasia and attempting to maliciously kill Corey. It is true the jury was also instructed it could convict Defendant if it found he acted with the specific intent to kill the unborn baby, even though there was no evidence he had that specific intent. However, Defendant did not object to this instruction. And while it is certainly error to instruct a jury on a theory not supported by the evidence, we conclude the instruction on this alternate theory in this case does not constitute plain error, as there was substantial evidence to convict Defendant under the other theory, that Defendant acted with the intent to

maliciously kill Anastasia.

### C. Photograph of the Unborn Child

In his third argument, Defendant contends the trial court erred in allowing the introduction of a photograph of the unborn child into evidence. We have reviewed Defendant's argument and conclude that the trial court did not reversibly err in allowing the evidence. The case turned on whether the jury believed Defendant fired the shot. The evidence was otherwise overwhelming that Anastasia's death by that bullet caused the death of her unborn child. Defendant has failed to show how the photograph impacted the jury's calculus in determining his guilt.

### III. Conclusion

We conclude Defendant received a fair trial, free of reversible error.

NO ERROR.

Panel consisting of Chief Judge DILLON and Judges WOOD and STADING.

Report per Rule 30(e).