IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-951

 Filed: 7 April 2020

Mecklenburg County, No. 16CRS238807

STATE OF NORTH CAROLINA

 v.

JOSHUA KOIYAN, Defendant.

 Appeal by Defendant from judgment entered 3 May 2019 by Judge Donnie

Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 18

March 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Tien Cheng,
 for State-Appellee.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C.
 Katz, for Defendant-Appellant.

 COLLINS, Judge.

 Defendant appeals from judgment entered upon a jury verdict of guilty of

robbery with a dangerous weapon. Defendant argues that the trial court plainly erred

by admitting expert testimony because the testimony did not demonstrate that the

expert applied accepted methods and procedures reliably to the facts of the case. We

discern no plain error.

 I. Background
 STATE V. KOIYAN

 Opinion of the Court

 On 24 October 2016, a grand jury indicted Defendant Joshua Koiyan for

robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87. On 29 April

2019, Defendant’s case came on for trial. The evidence at trial tended to show: On

12 October 2016, two employees were working at a Boost Mobile store in Charlotte,

North Carolina. The employees were Ana Torres and Guadalupe Morin, both of

whom worked the floor of the store as sales representatives. That afternoon, both

observed a young man—later identified as Defendant—enter the Boost Mobile store;

Defendant wandered the store for approximately 45 minutes and repeatedly asked

the employees whether the store sold iPhones. Torres noticed that Defendant seemed

nervous and she became suspicious that something was going to happen; in light of

her suspicion, Torres took all of the money out of her cash register except for the

dollar bills and hid the money. Torres also took pictures of Defendant with her

personal cell phone while he spoke with Morin.

 Approximately 45 minutes after Defendant entered the store, and after all

other customers had exited, Defendant pulled out a silver gun and jumped over the

counter. Defendant ordered Morin to open the cash registers, and then told both

women to go to the corner while he put the money into a plastic bag. Defendant then

took Torres’ purse, which contained two of her cell phones, her passport, her jewelry,

and her wallet, along with several display phones. Defendant told the women, “I’m

not going to hurt you all today because you all are being good,” jumped back over the

 -2-
 STATE V. KOIYAN

 Opinion of the Court

counter, and ran out of the store. Torres followed Defendant out of the store but lost

sight of him, and then called 911.

 Charlotte Mecklenburg Police Officers Kelly Zagar and David Batson arrived

at the store within four to five minutes. Torres provided them with a description of

Defendant, explaining that he was: a black male; approximately 5’7” tall; skinny

build; wore a black visor, black hoody, and jeans; and looked to be about 20 years old.

Zagar secured the crime scene for evidence and called the Charlotte Mecklenburg

Crime Scene Search. Keywana Darden, an investigator with the Crime Scene Search

team, collected, documented, and preserved all of the evidence found at the store. The

evidence included surveillance footage taken from cameras located inside the Boost

Mobile store and photographs of the scene. Darden also dusted areas throughout the

store and obtained latent fingerprints from the scene. Torres also gave the officers

the photographs she took of Defendant while he was in the store. Those photographs

were later obtained by the news media and broadcasted to the public.

 On 14 October 2016, two days after the robbery, Defendant was apprehended

and arrested by the Charlotte Mecklenburg police. Torres independently viewed

Defendant’s mugshot online but did not participate in a photographic or in-person

lineup.

 During the trial, Torres testified for the State and identified Defendant as

being the individual who committed the armed robbery of the Boost Mobile store.

 -3-
 STATE V. KOIYAN

 Opinion of the Court

Prior to trial, Defendant filed a motion to suppress Torres’ in-court identification,

arguing that Torres could not make an identification of him until just one week before

trial. Defendant argued that Torres admitted to viewing his mugshot prior to the

trial and thus could not independently identify him as the perpetrator. The trial

court denied Defendant’s motion to suppress, and Torres identified Defendant at trial

in the presence of the jury.

 Todd Roberts, a latent fingerprint examiner with the State of North Carolina,

testified as an expert witness at trial. Roberts testified to his education, training in

the field of latent fingerprint analysis, and his conclusion that the latent fingerprints

found at the Boost Mobile store were a match to Defendant’s fingerprints.

 On 3 May 2019, the jury found Defendant guilty of robbery with a firearm. The

trial court sentenced Defendant to 45-66 months’ imprisonment. Following

judgment, Defendant gave oral notice of appeal.

 II. Discussion

 Defendant’s sole argument on appeal is that the trial court plainly erred by

admitting Roberts’ expert opinion that Defendant’s fingerprints matched the latent

fingerprints left at the Boost Mobile store because Roberts’ testimony did not

demonstrate that he applied accepted methods and procedures reliably to the facts of

this case.

 -4-
 STATE V. KOIYAN

 Opinion of the Court

 Defendant acknowledges his failure to object to Roberts’ testimony at trial but

specifically argues plain error on appeal. “For error to constitute plain error, a

defendant must demonstrate that a fundamental error occurred at trial.” State v.

Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). In order

to show fundamental error, a defendant must establish prejudice—that the error “had

a probable impact on the jury’s finding that the defendant was guilty.” Lawrence,

365 N.C. at 518, 723 S.E.2d at 334 (quotation marks and citation omitted).

Accordingly, we review whether the trial court erred in admitting Roberts’ testimony

for plain error.

 It is the trial court’s role to decide preliminary questions concerning the

admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2019). Rule

702 of the North Carolina Rules of Evidence governs testimony by experts. Pertinent

to Defendant’s argument, Rule 702 provides as follows:

 (a) If scientific, technical or other specialized knowledge
 will assist the trier of fact to understand the evidence or to
 determine a fact in issue, a witness qualified as an expert
 by knowledge, skill, experience, training, or education, may
 testify thereto in the form of an opinion, or otherwise, if all
 of the following apply:
 (1) The testimony is based upon sufficient facts or
 data.
 (2) The testimony is the product of reliable
 principles and methods.
 (3) The witness has applied the principles and
 methods reliably to the facts of the case.

 -5-
 STATE V. KOIYAN

 Opinion of the Court

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2019). Prongs (a)(1), (2), and (3) together

constitute the reliability inquiry discussed in Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993), General Electric Co. v. Joiner, 522 U.S.

136 (1997), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). State v.

McGrady, 368 N.C. 880, 890, 787 S.E.2d 1, 9 (2016). “The primary focus of the inquiry

is on the reliability of the witness’s principles and methodology, not on the conclusions

that they generate[.]” Id. (internal quotation marks and internal citations omitted).

However, “conclusions and methodology are not entirely distinct from one another[;]”

thus, when the “analytical gap between the data and the opinion proffered” is too

great, the trial court is not required to admit the expert opinion evidence “that is

connected to existing data only by the ipse dixit of the expert.” Id. (internal quotation

marks and citation omitted).

 In State v. McPhaul, 256 N.C. App. 303, 314, 808 S.E.2d 294, 304 (2017), this

Court recently examined expert testimony regarding latent fingerprint analysis

under the three-prong reliability test set forth in McGrady. In McPhaul, the State’s

expert witness testified that she had worked as a print examiner for more than nearly

a decade; explained that each fingerprint contains distinguishing characteristics

called “minutia”; and testified that it was possible to identify the source of a latent

print by comparing the print to an individual’s “known impressions” and evaluating

the “minutia points.” Id. She further explained that she uses an optic camera to

 -6-
 STATE V. KOIYAN

 Opinion of the Court

compare the minutia points and examine the print pattern type, and she stated that

the procedures she followed were commonly used in the field of fingerprint

identification. Id. at 315, 808 S.E.2d at 304.

 However, when the expert testified to her ultimate conclusions, the expert was

“unable to establish that she reliably applied the procedure to the facts of this case[.]”

Id. The expert concluded that the latent print matched the defendant’s fingerprints,

and stated that she based that conclusion on her “training and experience.” Id. The

State asked the expert whether her other conclusions were based upon “the same

procedure” she described to the jury, and the expert stated that was correct. Id. at

316, 808 S.E.2d at 305. This Court determined that the expert’s testimony was

insufficient and failed to satisfy Rule 702’s three-pronged reliability test because the

testimony failed to show that the expert “reliably applied that methodology to the

facts of the case” and failed to explain “how she arrived at her actual conclusions in

this case.” Id. As the expert’s testimony “implicitly asked the jury to accept her expert

opinion that the prints matched[,]” this Court determined the testimony insufficient

and held that the trial court erred by admitting the testimony. Id.

 We determine that the testimony here is similar to the testimony in McPhaul

and hold that Roberts’ testimony failed to demonstrate how he arrived at his

conclusion that Defendant’s fingerprints matched the fingerprints left at the Boost

Mobile store. On direct examination, Roberts first explained that he was a latent

 -7-
 STATE V. KOIYAN

 Opinion of the Court

fingerprint examiner, had worked in the field for more than 14 years, and that his

primary responsibilities were to “evaluate, compare, and attempt to identify latent

[fingerprint] lifts collected by a crime scene investigator . . . to its individual[.]”

Roberts has degrees in “correctional and juvenile services and criminal justice,” two

years of in-house training with the State Crime Lab, and has been trained in “logical

latent analysis, advanced palm print comparison techniques, forensic ridgeology, and

fingerprint comparisons.” At the time of trial in this case, Roberts had testified as an

expert witness in latent fingerprint identification more than 75 times in state and

federal courts and estimated that he had identified and analyzed “tens of thousands”

of fingerprints.

 Roberts explained that he examines fingerprints by looking for three levels of

detail, with “level 1 being the basic just ridge flow. The level 2 detail is what we use

for identification, that is, consists of ending ridges and bifurcations and their spatial

relationship to each other. And then the level 3 [] detail is more on the microscopic

level, but it’s actually the structure of the ridge. It’s the pores located within the

ridge[.]” Roberts explained that he takes the latent fingerprints, puts it beside an

inked fingerprint, magnifies the prints, and examines the likenesses or

dissimilarities. Roberts testified that an example of “level 1 detail . . . is a right loop,

meaning that the ridge is just coming from the right side of the finger. They loop

around the core and then back out the right side.” “[L]evel 2 detail . . . , they’re located

 -8-
 STATE V. KOIYAN

 Opinion of the Court

within the print . . . . The ending ridges and the bifurcations is what makes that print

unique. There are places that you can see a bifurcation come over to another

bifurcation, creating an enclosure.” “The level 3 detail . . . includes the pores within

the print. . . . [T]hose holes that are in the ridge are pores, they’re actually in the top

of ridge, and that’s what secretes sweat, allows the fingerprint to print. That is the

level 3 detail.” This testimony sufficiently explained Roberts’ qualifications, training,

and expertise, and showed that Roberts uses reliable principles and methods.

 However, Roberts testified to his conclusions later on direct examination:

 [State]: The latent-print cards that were in State’s Exhibit
 6, did you compare those to [Defendant’s prints] that were
 State’s Exhibit 11?

 [Roberts]: Yes, ma’am.

 [State]: Did any of those latent prints match [Defendant’s]
 prints?

 [Roberts]: They did.

 [State]: Which ones?

 [Roberts]: 2-4-2, 2-4-3, 2-4-4, and then 2-11-1. All were
 identified to [Defendant].

 Pursuant to Rule 702, this testimony is insufficient as it fails to show that

Roberts applied accepted methods and procedures reliably to the facts of this case in

order to reach his conclusion that the fingerprints were a match. While Roberts

testified earlier that he generally examines prints for “three levels of detail” and looks

for “ridges and bifurcations and their spatial relationship” on each print, Roberts

 -9-
 STATE V. KOIYAN

 Opinion of the Court

failed to provide any such detail when testifying as to how he arrived at his

conclusions in this case. Moreover, he never explained what—if any—characteristics

from the latent fingerprints matched with Defendant’s fingerprints. Instead, when

asked whether any of the prints matched, Roberts merely stated that they did and

provided no further explanation for his conclusions. Like in McPhaul, Roberts’

testimony had the impermissible effect of “implicitly ask[ing] the jury to accept [his]

expert opinion that the prints matched.” McPhaul, 256 N.C. App at 316, 808 S.E.2d

at 305. As Roberts failed to demonstrate that he “applied the principles and methods

reliably to the facts of the case,” as required by Rule 702(a)(3), we determine that the

trial court erred by admitting the testimony.

 However, under plain error review, we do not conclude that the trial court

plainly erred by admitting the testimony. Defendant cannot show that he was

prejudiced as a result of this error because of the otherwise overwhelming evidence

that he was the perpetrator of the robbery.

 Torres provided two photographs of Defendant, which she took with her cell

phone while Defendant was in the Boost Mobile store, and the State entered the

photographs into evidence and published them to the jury. Torres also provided

testimony that Defendant was the individual who robbed her and the Boost Mobile

store. The State entered into evidence the surveillance video footage taken from the

store, played the video for the jury, and Torres identified Defendant when he

 - 10 -
 STATE V. KOIYAN

 Opinion of the Court

appeared on screen. Torres further identified Defendant by pointing him out in the

courtroom as the perpetrator of the robbery, and stated that she was “a hundred

percent” certain that Defendant was the person who robbed her. Torres noted that

she spent nearly 45 minutes with Defendant while he robbed the Boost Mobile store,

and that she would not “forget his face.”

 Altogether, Torres’ testimony and in-court identification of Defendant, along

with the photographs of Defendant and surveillance video footage showing Defendant

rob the Boost Mobile store, provided sufficient evidence that Defendant was the

perpetrator of the robbery. In light of this overwhelming evidence, we are not

persuaded by Defendant’s argument that the trial court’s error was so great as to

have had “a probable impact on the jury’s finding that the defendant was guilty.”

Lawrence, 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). As such, we conclude

that the trial court’s admission of Roberts’ expert testimony was not plain error.

 NO PLAIN ERROR.

 Judges DILLON and BROOK concur.

 - 11 -