An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-685

Filed 4 March 2026

Sampson County, Nos. 20CR515554-810, 20CR051553-810

STATE OF NORTH CAROLINA

v.

ANTWAN L. STEPHENS

Appeal by defendant from judgment entered 8 March 2023 by Judge Henry L. Stevens in Sampson County Superior Court. Heard in the Court of Appeals 11 February 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Karissa J. Davan, for the State.*

> *W. Michael Spivey for defendant.*

FREEMAN, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty on three charges of discharging a weapon into an occupied vehicle in operation. On appeal, defendant argues the trial court erred in denying his motion to dismiss two of the three counts of discharging a weapon into an occupied vehicle in operation. Defendant also argues the trial court erred in instructing the jury that each separate

shot was a separate offense. After careful review, we hold that defendant received a fair trial free from prejudicial error.

## I. Factual and Procedural Background

The evidence presented at trial tended to show the following. Defendant and Jacinda Joyner had a long dating relationship, and Joyner's mother testified that "they couldn't get along" at times. On the night of 17 August 2020, Joyner spent time with Edward Best and left her car in a parking lot overnight. Defendant and Best attended school together and had known each other for thirty years.

On the morning of 18 August 2020, Joyner and Best returned to the parking lot, discovered Joyner's license plate was missing from her car, and contacted the police. Joyner subsequently learned her mother had the plate and informed the officers. The officers allowed Best to drive behind Joyner to her mother's house because she did not have a license plate. However, the pair were separated at a left-hand turn due to traffic, so by the time Best drove up to Joyner's mother's house on Jacobs Street, he saw Joyner getting into her car and leaving quickly. Best never stopped his vehicle, but he noticed defendant's red Nissan Altima in the yard.

Best saw defendant move quickly to his car, obtain a chrome handgun, and fire into Best's moving car. Relevant on appeal, Best testified defendant shot three or four times at the passenger side and rear of the car as he sped by. One bullet went into a tire, and another went through the car and lodged into the back of the driver's seat. Joyner's mother heard gunshots and called 911.

Defendant drove after Best, so Best called 911 to report the situation and went to the Sampson County Sheriff's Office for safety. Best told sheriff's deputies that defendant shot at him on Jacobs Street. Deputies instructed Best to wait for the Clinton Police to handle the report.

Clinton Police officers responded to the "shots fired" call on Jacobs Street and found three nine-millimeter shell casings. The police officers then drove to the sheriff's station and spoke to Best, who was "very shook up" and "frantic." Best's car had four bullet holes and a flat tire. The bullet holes were located in the passenger side front quarter panel, rear bumper by the tailpipe, rear license plate, and back right rear of the car.

On 2 November 2020, defendant was indicted on the charges of possession of a firearm by a felon and three counts of discharging a weapon into an occupied vehicle in operation. Defendant's matter came on for trial on 6 March 2023. Defendant moved to dismiss two of the charges of discharging a weapon into an occupied vehicle in operation at the close of the State's evidence and renewed his motion at the close of all evidence, but the trial court denied these motions.

The trial court and the attorneys then discussed and agreed on the jury instructions, which were finalized without objection. The trial court instructed the jury:

> The defendant has been charged with three separate counts of discharging a firearm into an occupied vehicle while in operation, alleging at least three, distinct offenses.

> Each separate shot constitutes a separate offense. For each alleged offense of discharging a firearm into an occupied vehicle while in operation, the jury will consider whether the defendant committed a distinct offense. In other words, the jury will consider whether an offense of discharging a firearm into an occupied vehicle in operation was committed, and if so, whether it was committed once, twice, or three times.

The trial court defined each of the four elements of discharging a firearm into an occupied vehicle in operation. The trial court also instructed the jury, in relevant part, "You should not infer from anything that I have done or said that the evidence is to be believed or disbelieved, that a fact has been proven, or what your findings ought to be."

On 8 March 2023, the jury found defendant guilty on all charges. The trial court sentenced defendant to a consolidated sentence of 128 to 166 months' imprisonment.

Defendant did not give timely notice of appeal. Defendant filed a petition for writ of certiorari on 19 December 2023. On 26 February 2024, this Court granted defendant's petition to review the 8 March 2023 judgment.

## II. Jurisdiction

This Court may issue a writ of certiorari to review judgments of trial courts "when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a) (2023); *see also* N.C.G.S. § 7A-32(c) (2025) (providing

this Court may issue "prerogative writs" to aid our jurisdiction). Accordingly, we possess jurisdiction over defendant's appeal.

## III.    Standard of Review

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Bradsher*, 382 N.C. 656, 658 (2022) (cleaned up). Because we review alleged statutory errors de novo, *State v. Mackey*, 209 N.C. App. 116, 120 (2011), and expressions of judicial opinion are governed by sections 15A-1222 and 15A-1232 of our General Statutes, we review alleged expressions of judicial opinion de novo, *State v. Chavis*, 278 N.C. App. 482, 487 (2021). *See also* N.C.G.S §§ 15A-1222, 15A-1232 (2025). Generally, we review unpreserved issues for plain error. N.C. R. App. P. 10(a)(4) (2023); *see State v. Lawrence*, 365 N.C. 506, 516 (2012) (stating that "plain error review in North Carolina is normally limited to instructional and evidentiary error").

## IV.    Discussion

Defendant contends the trial court erred by denying his motion to dismiss two of the three counts of discharging a firearm into an occupied vehicle in operation. In the alternative, defendant argues that during jury instructions, the trial court expressed an impermissible opinion and incorrectly stated the law. We address each argument in turn.

### A.  Motion to Dismiss

Defendant argues the trial court erred by denying his motion to dismiss two of the three counts of discharging a firearm into an occupied vehicle in operation because the State failed to offer substantial evidence for each element of each charged offense. Defendant contends the State's evidence was insufficient to support three separate and distinct acts of intentionally firing a weapon.

"The question for a court on a motion to dismiss for insufficient evidence is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *Bradsher*, 382 N.C. at 658 (cleaned up). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" *State v. Smith*, 300 N.C. 71, 78–79 (1980), and "is the same as more than a scintilla of evidence[,]" *Bradsher*, 382 N.C. at 658. "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Bradsher*, 382 N.C. at 658 (citation omitted).

> Any person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second . . . into any occupied vehicle . . . that is in operation is guilty of a Class D felony.

N.C.G.S. § 14-34.1(a)–(b) (2025). A defendant willfully or wantonly discharges a firearm into an occupied, moving vehicle if they intentionally pull the trigger to

discharge the firearm "with the knowledge or reasonable grounds to believe" doing so would endanger others. *State v. McLean*, 211 N.C. App. 321, 330 (2011). A defendant commits separate acts of discharging a firearm if they must "employ [their] thought processes" each time they fire the weapon. *State v. Rambert*, 341 N.C. 173, 176–77 (1995). Multiple counts of discharging a firearm into an occupied vehicle in operation are supported by evidence showing each shot fired from a non-automatic weapon "was distinct in time, and each bullet hit the vehicle in a different place." *Id.*

In *State v. Rambert*, our Supreme Court upheld three counts of discharging a firearm into occupied property where "the evidence clearly show[ed] that [the] defendant was not charged three times with the same offense for the same act but was charged for three separate and distinct acts." *Id.* at 176. The Court reasoned each shot the defendant fired from a pistol was a separate and distinct act that required the defendant to "employ his thought processes each time he fired the weapon." *Id.* at 176–77. Moreover, the State need not identify the exact weapon or "nature of its firing mechanism," only that it was not firing on automatic, requiring a separate trigger pull for each shot. *State v. Morrison*, 272 N.C. App. 656, 668 (2020). In *Morrison*, for example, this Court held that witness testimony describing the weapon and the sound and timing of gunfire was sufficient to conclude that the weapon "was not firing on automatic." *Id.* at 666–69.

Physical evidence may also support the conclusion that the defendant committed separate acts when firing into an occupied vehicle in operation. Our

Supreme Court has used the existence and location of bullet holes on the vehicle to hold that the separate shots were separate offenses. *E.g., State v. Nobles*, 350 N.C. 483, 505 (1999). For example, in *Nobles*, the evidence showed multiple bullet holes in different places on the vehicle: the middle of the windshield; the windshield on the passenger's side; below the windshield on the driver's side; the driver's side headlight; the top of the truck; the bed of the truck; and the driver's side window. *Id.* The Court held the trial court did not err in denying the defendant's motion to dismiss "additional charges" of discharging a weapon into an occupied vehicle, where the physical evidence supported the conclusion that the defendant committed separate acts. *Id.*

Defendant maintains that the State's evidence failed to show the shots were not discharged in a single act with one trigger pull. Further, defendant argues the bullet holes' placements only establish that the shots were fired from a position where they could strike both the right side and rear of the car, not that they were fired at distinct times.

However, the State's evidence tended to show that defendant fired a semi-automatic weapon, not an automatic weapon, three distinct times, and employed his thought processes for each shot that entered the occupied vehicle in different places. Best testified he saw defendant firing a chrome pistol and described at least three distinct shots that hit his car in different places. The investigating officer testified to the separate locations of three shell casings that came from a nine-millimeter pistol

on the street where shots were fired. The officer also testified that the four bullet holes were in separate locations on the vehicle. This evidence, taken together, is "more than a scintilla of evidence" to support that defendant committed three separate acts. *See Bradsher*, 382 N.C. at 658. Accordingly, the trial court did not err in denying defendant's motion to dismiss two of the three counts of intentionally discharging a weapon into an occupied vehicle in operation.[1]

## B. Trial Court's Statement During Jury Instructions

Alternatively, defendant challenges the trial court's statement, "Each separate shot constitutes a separate offense," during jury instructions. Defendant argues that the trial court's statement was erroneous because it was an expression of impermissible opinion, and that it constituted plain error because it was an incorrect statement of the law.

### 1. Impermissible Opinion

Defendant maintains that the trial court's statement expressed an impermissible opinion—that the State had proved each shot was a separate act, and that it relieved the State's burden of proving each element of each offense.

The trial court "may not express during any stage of the trial, any opinion in

---

[1] To the extent defendant argues that the multiple charges raise double jeopardy concerns, because there is substantial evidence defendant committed three separate offenses of discharging a weapon into an occupied vehicle in operation, this argument is without merit. See Rambert, 341 N.C. at 175–77 (holding the defendant was not placed in double jeopardy where the evidence supported charges for three separate and distinct acts).

the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222. "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved . . . ." N.C.G.S. § 15A-1232. An improper expression of opinion by the trial court violates sections 15A-1222 and 15A-1232 of our General Statutes, and "the error is preserved for review without objection due to the mandatory nature of these statutory prohibitions." *State v. Austin*, 378 N.C. 272, 276 (2021) (cleaned up). "When an alleged statutory violation by the trial court is properly preserved, . . . we review for prejudicial error pursuant to N.C.G.S. § 15A-1443(a)." *Id.* at 276–77. Section 15A-1443(a) states,

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a *reasonable possibility* that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

N.C.G.S. § 15A-1443(a) (2025) (emphasis added).

"When reviewing alleged improper expressions of judicial opinion under this [reasonable possibility] standard, we utilize a totality of the circumstances test to determine whether the trial court's comments crossed into the realm of impermissible opinion." *Austin*, 378 N.C. at 277 (cleaned up). An alleged improper remark by the trial court is not reviewed in isolation and is not grounds for a new trial when, considering the circumstances under which it was made, "it could not have prejudiced

the defendant's case." *Id.* at 278 (cleaned up). "The bare possibility that an accused may have suffered prejudice from the conduct or language of the judge is not sufficient to overthrow an adverse verdict." *Id.* (cleaned up). Even where a statement is "less than exemplary," where a trial court "edit[s] his [or her] own comments" and makes efforts "to maintain progress and proper decorum" in the proceedings, a defendant will have to show prejudice as a result of the trial court's statements. *State v. Larrimore*, 340 N.C. 119, 155 (1995) (cleaned up).

An alleged impermissible expression of opinion in jury instructions will not be prejudicial if the entire context makes clear the jury was not misled. *See State v. Alston*, 249 N.C. 577, 594 (1978) ("[A]ppellate review of the trial court instructions . . . will be read contextually and an excerpt will not be held prejudicial if a reading of the whole charge leaves no reasonable grounds to believe that the jury was misled."). In *State v. Austin*, for example, the defendant argued the trial court expressed an impermissible opinion that an assault had occurred during jury instructions. 378 N.C. at 275. However, the trial court also instructed the jury, "You should not infer from anything I have done or said that the evidence is to be believed or disbelieved, that a fact has been proved or what your findings ought to be." *Id.* at 279. Because the State's evidence at trial was sufficient for the jury to determine whether the elements of the charge were met, and the instructions were clear that the jury alone was to make that determination, our Supreme Court held that the trial court did not prejudicially err by expressing an opinion. *Id.* at 280.

Here, the trial court said, "Each separate shot constitutes a separate offense." Presuming without deciding that this was an improper statement—when considered under the totality of the circumstances—this statement did not amount to a prejudicial error. Further, the statement did not relieve the State of its burden to prove each element of each charged offense. The statement was followed by a thorough explanation that "the jury will consider whether an offense of discharging a firearm into an occupied vehicle in operation was committed, and if so, whether it was committed once, twice, or three times."

The trial court also explained the State must prove four things beyond a reasonable doubt for the jury to find defendant guilty of each separate charged offense: (1) defendant willfully and wantonly discharged a firearm into a vehicle at least once for each charged offense; (2) the vehicle was occupied by one or more persons; (3) defendant knew or had reasonable grounds to believe the vehicle was occupied; and (4) the vehicle was in operation. Furthermore, the trial court instructed the jury it "should not infer from anything that I have done or said that the evidence is to be believed or disbelieved, that a fact has been proven, or what your findings ought to be." Thus, in context, the trial court explained every element of the offenses and specified that the jury alone must determine whether defendant committed distinct offenses.

Like in *Austin*, a review of the totality of circumstances—including the trial court's clear and robust instructions and the evidence presented at trial—

demonstrates defendant was not prejudiced by the trial court's statement. *See* 378 N.C. at 280. Absent the alleged improper remark, there was no reasonable possibility the jury would have reached a different result. Therefore, the trial court's statement resulted in no prejudicial error.

### 2. *Jury Instruction*

Defendant also argues the trial court's statement during jury instruction constituted plain error because it was a misstatement of the law. *See* N.C. R. App. P. 10(a)(4) ("[A]n issue that was not preserved . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

No portion of the jury instructions may be made "the basis of an issue on appeal" unless the party timely objects. N.C. R. App. P. 10(a)(2) (2023). "Without an objection, that error is deemed unpreserved, and the issue is therefore waived on appeal." *State v. Reber*, 386 N.C. 153, 157 (2024). "Plain error exists for the rare cases where the harshness of this preservation rule vastly outweighs its benefits." *Id.* at 158. Our Supreme Court held that plain error review "is reserved for grave error which amounts to a denial of a fundamental right of the accused, and that it focuses on error that has resulted in a miscarriage of justice or the denial of a fair trial." *Id.* (cleaned up). Plain error review is applied to unpreserved issues, "and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error." *Lawrence*, 365 N.C. at 516; *see also* N.C. R. App. P. 10(a)(4).

Under plain error review, the defendant must satisfy a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Reber*, 386 N.C. at 158 (cleaned up).

"To show that an error was fundamental, a defendant must establish prejudice . . . ." *Lawrence*, 365 N.C. at 518. "In determining whether an error was prejudicial, our courts have examined the entire record to determine if the error had a *probable* impact on the jury's finding of guilt." *Id.* at 517 (cleaned up) (emphasis in original). To show, absent the alleged error, a different result was probable, this standard "requires a showing that the outcome is significantly more likely than not." *Reber*, 386 N.C. at 159. "[A]n event will probably occur if it is almost certainly the expected outcome . . . ." *Id.* (cleaned up). "For plain error to be found, it must be probable, not just possible, that absent the instructional error the jury would have returned a different verdict." *State v. Juarez*, 369 N.C. 351, 358 (2016). Therefore, the prejudice prong under plain error review is a higher standard than under harmless error review. *See Lawrence*, 365 N.C. at 512, 516.

Here, the trial court and attorneys discussed and agreed upon the jury instructions, and defendant did not object to the statement at trial. Thus, we review

the trial court's statement for plain error because defendant did not preserve the issue at trial. *See* N.C. R. App. P. 10(a)(4); *see also Lawrence*, 365 N.C. at 516. For the same reasons the trial court's statement was not prejudicial under harmless error review, it does not rise to the level of plain error. Defendant cannot show that the statement possibly affected the outcome under the more lenient standard, so defendant similarly cannot show that, absent the statement, there probably, or "almost certainly," would have been a different outcome. *See Juarez*, 369 N.C. at 358; *see also Reber*, 386 N.C. at 159–60. Accordingly, the trial court did not plainly err in its jury instructions.

## V. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's motion to dismiss and did not err in instructing the jury.

NO ERROR IN PART, NO PREJUDICIAL ERROR IN PART, NO PLAIN ERROR IN PART.

Chief Judge DILLON and Judge FLOOD concur.

Report per Rule 30(e).